Bruce **BARCELLONA** et al., Plaintiffs-Appellees, Cross-Appellants,

v.

**TIFFANY ENGLISH PUB, INC.,** d/b/a TGI Friday's, Defendant-Appellant, Cross-Appellee.

No. 77–1892.

United States Court of Appeals, Fifth Circuit.

June 20, 1979.

---

**466**

Paul O. Miller, III, James R. Lockard, Jackson, Miss., for defendant-appellant, cross-appellee.

Thomas W. Tardy, III, Kenneth A. Rutherford, Jackson, Miss., for plaintiffs-appellees, cross-appellants.

Before TUTTLE, TJOFLAT and HILL, Circuit Judges.

TUTTLE, Circuit Judge:

The plaintiffs are former waiters who brought suit against this Friday's restaurant under the Fair Labor Standards Act (FLSA), seeking back wages, liquidated damages, and attorney's fees under 29 U.S.C. § 216(b). The waiters attack the restaurant's policy of using their tips to satisfy its obligation to pay a minimum wage. The restaurant contends that the tips were withheld pursuant to a then valid agreement with the waiters whereby all tips were considered to be the property of the restaurant and used towards satisfaction of the minimum wage requirement. The district court found no agreement or understanding as to such disposition of the tips, and held that the evidence showed a flagrant violation of the Act. After determining liability, the court referred the case to a special master to consider the amount of damages due each waiter. After an evidentiary hearing, the master filed extensive findings of fact and conclusions of law, including a detailed scheme determining actual damages due to each waiter, however, the master recommended against awarding the penalty of liquidated damages. The district court adopted the recommendations of the master: finding the restaurant liable for $34,141.50 in actual damages, awarding costs and an attorney's fee of $17,000.00, and refusing to allow liquidated damages on the grounds that "there was nothing defiant intended by the Defendant . . . it simply did not know and did not understand exactly what it was to do with respect to these records on these waiters." Both parties appealed. Although we affirm the district court's determination of liability and computation of actual damages, we reverse its denial of liquidated damages. Section 11 of the Portal-to-Portal Act, 29 U.S.C. § 260, permits the judge to deny liquidated damages only if the employer shows its action was in good faith and there were reasonable grounds for believing the action was not a violation of the FLSA. The restaurant fell short of establishing these elements. The district court's original finding of a flagrant violation is fatally inconsistent with its later denial of liquidated damages, and therefore the denial must be set aside.

A crucial issue in the trial of this case related to the ownership of tips. The restaurant contended that it had a valid agreement with the waiters that *all* tips belonged to the restaurant, to be surrendered to it to count towards satisfying its obligation to pay the waiters a minimum wage. In practice, however, the system in no way resembled that described by the restaurant. Although the restaurant introduced "acknowledgments" apparently signed by some of the waiters which attempted to create the impression that the

waiters were employed by TGI Friday's on the condition and with the understanding that all of their tips belonged to the employer, there was substantial evidence that the waiters had never heard of such a policy or of any agreement that they were to relinquish ownership of their tips.[1] The testimony of the restaurant's witnesses and the testimony presented by the waiters reveals such vast conflicts that only one version could have been accepted. The trial court, having the opportunity to observe the demeanor of the witnesses and exhaustively review the records of the restaurant, decided that "the evidence. . . . has not shown or convinced the Court by a preponderance that the employer and these employees had any agreement or understanding as to such disposition of these tips. . . . " Although there was evidence going both ways, the restaurant did not meet the formidable burden of upsetting the district court's finding. F.R.Civ.P. 52(a). *Chaney v. City of Galveston,* 368 F.2d 774 (5th Cir. 1966).[2]

■ If there was no agreement as to ownership, then the tips were the property of the recipient. *Williams v. Jacksonville Terminal Co.,* 315 U.S. 386, 397, 62 S.Ct. 659, 86 L.Ed. 914 (1940). Prior to May 1, 1974, the Fair Labor Standards Act stated with respect to tips:

> In determining the wage of a tipped employee, the amount paid such employee by his employer shall be deemed to be increased on account of tips by an amount determined by the employer, but not by an amount in excess of 50 per centum of the applicable minimum wage . . . ..

29 U.S.C. § 203(m). Thus, if no agreement existed transferring ownership of tips, the tips were by law the property of the waiters who received them, and those tips could be credited towards no more than fifty percent of the minimum wage. Therefore, the district court correctly interpreted this statute to require that the waiters be compensated at the rate of fifty percent of the then minimum wage for all hours worked as tipped employees prior to May 1, 1974.[3]

■ On May 1, 1974, the Act was amended to place the burden of proving the amount of tips received on the employer for purposes of allowing the fifty percent tip credit. To implement this policy, the following sentence was added to § 203(m):

> [The fifty percent tip credit] shall not apply with respect to the tipped employee unless (1) such employee has been informed of this subsection, and (2) all tips received by such employee have been returned by the employee . . . ..

Since the parties agreed by stipulation that the restaurant did not inform the waiters of any tip credit after this change in the law, and since it is undisputed that far less than all tips received were returned by the

---

1. The records of the restaurant were inaccurate, incomplete, and of very little value in attempting to determine the actual practice employed by the restaurant. The testimony of the witnesses paints a picture of a disorganized and confused management. Several waiters testified that they were specifically told they worked *only* for their tips. Although most waiters understood that it was the policy to require them to turn over some of their tips generally equal to the number of hours worked multiplied times the minimum wage, which they, in turn, would get back in the form of a paycheck withholding income and Social Security taxes, even this practice was not rigidly followed. Further, the waiters were not required to report any hours worked on double shifts, substitute shifts, or as shift leaders as an inducement to perform these roles.

2. Since we affirm the district court's finding that no agreement existed regarding ownership of tips, we do not reach the question of the validity of such agreements in face of the 1966 amendments to § 3(m) of the Act. 29 U.S.C. § 203(m) 1966. *Compare* S.Rep. No. 93–690, 93rd Cong., 2d Sess. at 43 *and Melton v. Roundtable Restaurant, Inc.,* 20 Wage and Hour Cases 532, 67 CCH Lab.Cas. ¶ 32,630 (N.D.Ga.1971), *with* S.Rep. No. 1487, 89th Cong., 2d Sess. at 12 *and Hodgson v. Bern's Steak House, Inc.,* 20 Wage and Hour Cases 262 (M.D.Fla.1971).

3. The court allowed the waiters damages for full minimum wage for those hours worked in a nontipped capacity, such as laying tables, cleaning up, and other duties preparing the restaurant for business, for which they had received no compensation. *See Hodgson v. Frisch's Dixie, Inc.,* 469 F.2d 82 (6th Cir. 1972).

employees, the district court properly found that the employees were entitled to the full minimum wage for every hour worked after May 1, 1974. *See Richard v. Marriott Corp.,* 549 F.2d 303 (4th Cir. 1977).[4]

The district court's ruling on the issue of liquidated damages is more troublesome. The waiters contend that based on the facts as found by the district court in its decision on the question of liability, they are entitled to liquidated damages as a matter of law. We agree.

Section 16(b) of the FLSA, 29 U.S.C. § 216(b), provides that "any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages . . . and in an additional equal amount as liquidated damages." The language of the statute is mandatory, and until 1947 district courts had absolutely no discretion: if the employer violated the Act, he paid back wages and an equal amount in liquidated damages. In 1947, Congress passed the Portal-to-Portal Act, Section 11 of which does permit the district court, "in its sound discretion," to award a lesser amount of liquidated damages or none at all, "*if* the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended." Section 11, 29 U.S.C. § 260 (emphasis added).

The district court found on the liability issue that "the evidence in this case . . shows by a preponderance of the evidence that there has been a flagrant violation by the employer of the requirements of the Fair Labor Standards Act," but then rather surprisingly changed its tone one year later in its final order adopting the special master's recommendation to deny liquidated damages. In its subsequent opinion, the court made no specific finding of good faith

or reasonable belief in the legality of the acts of the restaurant but merely stated:

This Court is convinced from the facts and circumstances and the background of the owners that there was nothing defiant intended by the defendant, but it simply did not know and did not understand exactly what it was to do with respect to these records on these waiters.

We understand the language of section 11 of the Portal-to-Portal Act to impose upon the employer who would escape the payment of liquidated damages a plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict. *See Rothman v. Publicker Industries,* 201 F.2d 618, 620 (3d Cir. 1953). On the present record, the restaurant never seemed to attempt to meet the burden. The only indication we can glean from the record concerning Friday's good faith and the reasonableness of its belief in the legalities of its actions is the restaurant's contention that the owners were merely a couple of farmers, acting for the first time as employers, with blind faith in their franchisor. Perhaps this argument was the basis for the district court's decision to deny liquidated damages due to nondefiant ignorance. This is curious because the court's conclusory justification for its denial of liquidated damages is so totally inconsistent with its earlier finding of a willful and flagrant violation of the FLSA.

In addition to our concern over the inconsistency between the finding of a flagrant violation and yet a later denial of liquidated damages based on nondefiant ignorance, we also doubt the validity of ignorance as a defense to liability for liquidated damages under Section 11. We do not believe an employer may rely on ignorance alone as *reasonable* grounds for believing that its actions were not in violation of the

---

4. We have considered the restaurant's various challenges to the Special Master's computations and find them to be without merit.

Act. *See Hooper v. Acme Car & Truck Rentals, Inc.,* 47 CCH Lab.Cas. ¶ 31,404 (N.D.Ga.1963), *aff'd on other grounds,* 331 F.2d 442 (5th Cir. 1964). Further, we feel that good faith requires some duty to investigate potential liability under the FLSA. *See Leister v. Multi-Systems, Inc.,* 37 CCH Lab.Cas. ¶ 65,425 (S.D.N.Y.1951). Even inexperienced businessmen cannot claim good faith when they blindly operate a business without making any investigation as to their responsibilities under the labor laws. Apathetic ignorance is never the basis of a reasonable belief.

 Finally, we must reverse the district court's award of prejudgment interest. This court has held in *Foremost Dairies, Inc. v. Ivey,* 204 F.2d 186 (5th Cir. 1953), that interest as such is not recoverable under this statute.

For these reasons, we reverse that part of the district court's decision which denied liquidated damages and awarded prejudgment interest, but we affirm the decision in all other respects. On remand, the district court should amend its judgment accordingly. The court should also consider supplementing the award of counsel fees to correspond with any adjustment in the final judgment on remand and to pay for the prosecution of the appeal.

AFFIRMED in part, REVERSED and REMANDED in part.

JAMES C. HILL, Circuit Judge, specially concurring.

It is our duty in this as in other cases to ascertain, if possible, the content of a law which the Congress has enacted. Upon discovering that law, we are required to apply it to the facts of the case before us. The majority opinion in this case correctly accomplishes this. I concur, but, for myself, add the following remarks.

We are dealing with the law establishing minimum *wages.* The provisions with which we have wrestled have nothing to do with assuring minimum *earnings* for the waiters. 29 U.S.C.A. § 203(m) provides that a restaurant owner or operator must pay to each waiter 50 percent of the applicable minimum wage irrespective of how much earnings may be actually realized in tips. Thus, if after furnishing the capital, operating expenses, and know-how, and after assuming the business risks involved in establishing a restaurant, someone succeeds to the extent that the restaurant's waiters earn far in excess of minimum wages, that entrepreneur must still pay a penalty for providing this employment equal to 50 percent of what the minimum wage would be if the waiters were not receiving any tips. As I view it, this expresses the conclusion by our Congress that an entrepreneur ought to be discouraged from providing job opportunities. The waiters in the case investigated here were young people for whom it is said that job opportunities are not great in our present economy. There must be some wisdom in discouraging the creation of good paying jobs for those people under these circumstances, or surely the Congress would not have enacted such legislation. I must confess to my own limitation which prevents me from fully understanding the wisdom inherent in this policy.

Nevertheless, it is the law. Therefore, I concur.