Willie WASHINGTON, et al.,
Plaintiffs-Appellees,

v.

John MILLER, Jr., Defendant-Appellant.

No. 83–3323
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Dec. 23, 1983.

Steven L. Sommers, Orlando, Fla., for defendant-appellant.

Robert A. Williams, Fla. Rural Legal Services, Inc., Immokalee, Fla., for plaintiffs-appellees.

Before HILL, JOHNSON and HENDERSON, Circuit Judges.

PER CURIAM:

The district court opinion adequately and correctly covers all of the issues raised on appeal. The opinion also determined in "The FLCRA Violations-F Housing" an issue, whether there is a private remedy for violation of 7 U.S.C. § 2044(b)(12), not presented on appeal and which we do not address. As to all other issues, we AFFIRM on the basis of the district judge's April 26, 1983, Memorandum Opinion, attached hereto as an appendix and also reported at 26 WH Cases 198 (BNA) (1983).

APPENDIX

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

| | |
|---|---|
| WILLIE WASHINGTON, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | CIVIL ACTION |
| ) | |
| JOHN MILLER, JR., ) | NO. 82–343–ORL–CIV–EK |
| ) | |
| Defendant. ) | |
| _____ ) | |

MEMORANDUM OPINION

This action to recover damages for violations of the Farm Labor Contractor Registration Act, 7 U.S.C. § 2041 *et seq.* ("FLCRA") and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") was tried before the Court on April 11, 12 and 13, 1983. This Court has jurisdiction pursuant to 7 U.S.C. § 2050a(a), 29 U.S.C. § 216(b) and 28 U.S.C. § 1337.

The Defendant John Miller is a registered farm labor contractor who furnishes migrant workers to various growers in the Mount Plymouth area for agricultural employment including Long & Scott Farms. As part of his farm labor contracting business, Miller operates a migrant labor camp

APPENDIX—Continued

known as the Farmer's Labor Camp at Mount Plymouth, Florida.

Plaintiff Curtis Hunter lived and worked at the Farmer's Labor Camp during October, 1981. The other Plaintiffs were transported to the Farmer's Labor Camp from Fort Myers, Florida at the end of May, 1982 by one Henry Lumpkin.

## The FLCRA VIOLATIONS

A. *Engaging the Services of an Unregistered Farm Labor Contractor.*

■ The FLCRA provides that "no person shall engage the services of any farm labor contractor to supply farm laborers unless he first determines that the farm labor contractor possesses a certificate from the Secretary that is in full force and effect at the time he contracts with the farm labor contractor." 7 U.S.C. § 2043(c).

The evidence is uncontroverted that Plaintiffs Willie Washington, Robert Davis, Edward Turner, Moses Thomas, Jessie Williams and Maxwell Williams were transported to Defendant's labor camp by Henry Lumpkin. At the time Mr. Lumpkin took plaintiffs from Ft. Myers to Mount Plymouth he did not have a 1982 certificate of registration as a farm labor contractor authorizing him to transport migrant workers.

Miller maintains that Lumpkin simply showed up unexpectedly at the labor camp with the six workers. Plaintiffs point to the deposition testimony of Henry Lumpkin that he recruited Plaintiffs at the direction of Miller and the fact that a pay advance made to Plaintiffs by Lumpkin may have been deducted from their pay by Miller. The Court finds that regardless of how Plaintiffs came to be transported to the labor camp, Miller afterwards ratified their recruitment and transportation by hiring them into his crew. Plaintiffs became not only Defendant's employees but his customers as well. The Farm Labor Contractor Registration Act prohibits the employment of unregistered contractors who show up 'at the door' as well as the situation in which

the unregistered contractor and the person to be furnished the workers make their arrangements in advance. The Court therefore finds that Miller violated 7 U.S.C. § 2043(c) by engaging the services of an unregistered farm labor contractor.[1]

B. *Exhibiting Certificate of Registration.*

■ The FLCRA required Defendant Miller to exhibit to Plaintiffs his certificate of registration as a farm labor contractor. 7 U.S.C. § 2045(a). Although Miller did not personally exhibit his certificate of registration to Plaintiffs, the Court finds that photocopies of the certificate were posted at the worksite and that such posting meets the requirements of 7 U.S.C. § 2045(a). Any harm to the Plaintiffs from not being individually shown Mr. Miller's certificate is *de minimis.*

C. *Disclosure of the Terms and Conditions of Employment.*

The FLCRA requires that every farm labor contractor shall—

(b) ascertain and disclose to each worker at the time the worker is recruited the following information to the best of his knowledge and belief: (1) the area of employment (2) the crops and operations on which he may be employed, (3) the transportation, housing and insurance to be provided him, (4) the wage rates to be paid him (5) the charges to be made by the contractor for his services, (6) the period of employment ... 7 U.S.C. § 2045(b)

In addition to this requirement, Defendant was required by 7 U.S.C. § 2045(c) to post in a conspicuous place, the terms and conditions of employment and by 7 U.S.C. § 2045(d) to post the terms and conditions of occupancy for the housing provided.

Again, Mr. Miller did not personally disclose the terms and conditions of employment to any of the Plaintiffs.

---

[1] Plaintiff Curtis Hunter was not transported to the camp by Lumpkin and therefore is not entitled to recover for this violation.

APPENDIX—Continued

▇ Terms and conditions of employment were, however, conspicuously posted in the labor camp messhall and at least some of the Plaintiffs remembered seeing them shortly after their arrival in the camp. Under the circumstances, the Court finds that disclosures were made to the Plaintiffs. That, however, does not end the Court's inquiry. Not only must the terms and conditions be posted pursuant to 7 U.S.C. § 2045(c) and (d), but the statements posted must accurately and completely disclose the true terms and conditions of employment to the best of the contractor's knowledge and belief. In this case, the Court finds that the disclosures made misrepresented the actual working and living conditions at the camp.

The sign posted in the messhall misstated practically every term of employment. It stated, for example, that the rent was $7.50 per week when Defendant's records show that $8.00 was deducted from Plaintiffs' pay for rent. The sign stated two meals would be served each day at the price of $2.00 and $3.00. Actually, the plaintiffs were charged $1.00 for breakfast, $3.00 for lunch, and $3.00 for supper. On occasion, workers would be charged $3.50 for lunch or dinner. The sign stated wine sold for $3.50 per fifth; in fact, during the time Plaintiffs resided in the camp, wine was $4.00 per fifth.

The sign was no better when it came to the crucial question of the wage rates to be paid. Pickles, according to the sign, were 30¢ per basket; actually plaintiffs were paid 35¢ per basket. Corn was 12¢ per crate according to the sign; Miller, however, stated that corn was paid 11¢ per box for the packers, 16¢ per box for the pullers and $3.35 per hour for the other workers on the "muletrain."

Miller contends that other signs were posted with the correct information. That may be, although there is no mention on any of the signs introduced into evidence, of the pay rates for the work Plaintiffs did picking oranges or of the price of cigarettes at the camp. In any case, the posting requirements of 7 U.S.C. § 2045(c) and (d) are obviously intended to provide the migrant worker with accurate information concerning the wage rates to be paid and the various charges or deductions. A farm labor contractor cannot satisfy this requirement by posting several signs with varying terms and conditions, leaving the worker to guess which terms are correct.

The Court finds that Defendant violated 7 U.S.C. §§ 2045(c), (d) and 7 U.S.C. § 2044(b)(12) by posting inaccurate and confusing disclosure statements.

### D. *Itemized Earnings Statements.*

▇ Miller was required by 7 U.S.C. § 2045(e) to provide to each of the Plaintiffs a statement of all sums paid to him (including sums received on Plaintiffs' behalf) on account of their labor and to provide to each plaintiff an itemized statement showing all sums withheld by him and the purpose for which withheld.

Miller admitted that no information was provided to Plaintiffs regarding the amounts he received from the farmers to whom he furnished them on account of their labor.

Payday at the camp was on Saturday. Each worker received a small brown enveloping [sic] containing his cash wages and two receipts. One statement was labelled either "food" or sometimes "food and wine." Actually this statement showed anything the worker had received on credit during the week, including cash advances; it also showed the balance forward on the worker's account at the company store during the previous week. The second statement showed total earnings, social security deductions, rent, whatever Miller decided to take out for payment on the worker's account, the balance due, total deductions, and net wages.

But these statements did not itemize *all* the various deductions in such a way as to permit a worker to ascertain whether or not his bill at the camp had been properly computed or not. Coupled with the varying and inconsistent statements as to what the

## 802

charges were, the receipts only added to the worker's confusion.

Although the specificity of itemization required by the Act might be open to question, lumping all expenditures for the week into one bill does not meet the Act's requirements. The Court therefore finds that Miller has violated 7 U.S.C. § 2045(e) by failing to provide each of the Plaintiffs with statements of sums paid to him on account of their labor and by failing to provide an itemized statement showing all sums withheld by him and the purpose for which withheld.

### E. *Recordkeeping.*

Farm Labor contractors are required by 7 U.S.C. § 2045(e) to keep payroll records which "show for each worker total earnings in each payroll period, all withholdings from wages, and net earnings. In addition, for workers employed on a time basis, the number of units of time employed and rate per unit of time shall be recorded on the payroll records, and for workers employed on a piece-rate basis, the number of units of work performed and the rate per unit shall be recorded."

Miller's records are deficient in the following respects: As discussed further below, the Court finds that the hours recorded do not accurately reflect the hours worked. Occasionally, no hours would be shown for work picking oranges. Miller's records also do not show for workers paid on a piece-rate basis, the rate per unit. Although there was much testimony that corn pullers were paid on a piece-rate basis at the rate of 16¢ per box, the payroll records do not show how many boxes a worker was credited for.

Miller maintained two sets of records; one which showed only deductions for social security taxes, and a payroll journal which showed the deductions for food, wine and housing furnished the workers. Although required "to provide the person to whom any migrant worker is furnished all information and records required to be kept under this subsection [7 U.S.C. § 2045(e)], Miller provided Long & Scott Farms with a copy of the payroll records showing only social security deductions, but not the payroll journal which showed the cash wages for Plaintiffs and other crewmembers far below the minimum wage. Plaintiffs have clearly established a violation of the recordkeeping provisions of 7 U.S.C. § 2045(e).

### F. *Housing.*

Lastly, Plaintiffs contend that the housing failed to comply with State health and safety standards in violation of 7 U.S.C. § 2044(b)(12). Testimony revealed that the camp and in particular, the restrooms were often in an unsanitary condition. This testimony was supported by the inspection reports of the health authorities which showed that these conditions were not isolated infractions of the health codes, but were long standing problems at the camp. Defendant did make some efforts to fix the plumbing when it broke down, but did not correct what appears to have been the basic problem—over-crowding in the camp. According to Mr. Miller at the time plaintiffs lived in the camp, there were 80 persons in the camp, 20 more than its permitted capacity. This situation was directly under Defendant's control: Therefore, the Court finds that Defendant did not maintain the housing provided Plaintiffs in compliance with all applicable Federal and State safety and health standards.

Defendant contends that there is no private remedy for a violation of 7 U.S.C. § 2044(b)(12) since this section of the Act is not part of the obligations and prohibitions set out in 7 U.S.C. § 2045. However, § 12(a) of the FLCRA provides that any person claiming to be aggrieved by the violation of *any* provision of this chapter ... may file suit ... 7 U.S.C. § 2050a(a) (emphasis added). Thus, it is clear that Congress intended to create a private remedy for housing violations. *Neizil v. Williams,* 543 F.Supp. 899, at 906 (M.D.Fla.1982). The Court holds that the Plaintiffs are entitled to recover for the violation of 7 U.S.C. § 2044(b)(12).

APPENDIX—Continued

### G. *Intentional Nature of Violations and Relief.*

■ There is no question that Miller was fully aware of his obligations under the FLCRA; he had previously been enjoined to comply with the Act by a U.S. District Court in Virginia. The Court concludes that the Defendants' violations were intentional within the meaning of the Act.

Therefore, the Plaintiffs are entitled to recovery for the violations. Upon a finding of intentional violation of the Act by a Defendant, § 2050a(b) provides that the Court may award liquidated statutory damages of up to $500 for each intentional violation. 7 U.S.C. § 2050a(b). *Aranda v. Pena,* 413 F.Supp. 849 (S.D.Fla.1976); *DeLeon v. Ramirez,* 465 F.Supp. 698 (S.D.N.Y. 1979); *Alvarez v. Joan of Arc,* 658 F.2d 1217 (7th Cir.1981). The violations of the Act in this case are not merely technicalities but serious violations which denied Plaintiffs the substantive protections of the FLCRA. Each Plaintiff is accordingly entitled to a judgment for liquidated damages of $500.00 per violation.

### THE FLSA VIOLATIONS

■ Under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.,* the Defendant was obligated to pay the Plaintiffs the minimum wage then in effect of at least $3.35 per hour in cash or its equivalent. The law insists that these payments be "free and clear" subject to one specific exception. Deductions are permitted for the "reasonable cost" of board, lodging, or other facilities furnished employees.

Defendant's own records show the Plaintiffs were paid far less than the minimum wage in cash. Moreover, either intentionally or negligently, Defendant failed to keep accurate and adequate records of the hours worked. Testimony as to the hours worked varied widely and was often confused and contradictory. Considering all the evidence, the Court holds that it is just and reasonable to reconstruct the hours worked so as to credit Plaintiffs for at least four hours work per day when they were employed harvesting corn and six hours work on days when they were employed on more than one crop. With respect to other work days, the Court will credit the employer's record of hours worked.

Section 3(m) of the FLSA, 29 U.S.C. 203(m), allows employers to include the reasonable cost of meals, lodging, or other facilities in employee wages for purposes of FLSA. The regulations promulgated by the Secretary of Labor define "reasonable cost" to be not more than the actual cost to the employer of the board, lodging, or other facilities customarily provided by him to his employees. 29 C.F.R. § 531.3(a). " 'Reasonable cost' does not include a profit to the employer or any affiliated person." 29 C.F.R. § 531.3(b).

The employer has the burden of showing that he is entitled to the credits claimed under § 3(m) of the FLSA. *Donovan v. New Floridian Hotel, Inc.,* 676 F.2d 468 (11th Cir.1982). In this case, the Court finds that Defendant has not met that burden. Plaintiffs, moreover, have shown that Miller *did* realize a profit on some of the items furnished members of his crew. For example, wine sold to the crew for $4.00 per bottle was purchased by Miller for $1.59 per bottle.

It is not possible from the records introduced by Miller as to the expenses of operating the labor camp to determine what was the reasonable cost of the facilities provided.

This is not to say that the facilities furnished had no value. However, to separate the reasonable cost of these facilities from the total cost plus profit would require the Court to speculate on the basis of an inadequate and inaccurate record. Under these circumstances, the *New Floridian* case requires that the Defendant be denied credit for the meals, wine, lodging and other facilities.

The amounts of unpaid minimum wages due Plaintiffs as a result of the aforesaid failure to comply with the FLSA are as follows:

| | |
|---|---|
| Robert Davis | $230.83 |
| Curtis Hunter | 86.89 |

APPENDIX—Continued

| Moses Thomas | $ 23.37 |
|---|---|
| Edward Turner | 40.95 |
| Willie Washington | 81.90 |
| Jessie Williams | 315.65 |
| Maxwell Williams | 247.38 |

In addition to back wages, Plaintiffs are entitled to an equal amount in liquidated damages. Section 11 of the Portal-to-Portal Act, 29 U.S.C. § 260 imposes "upon the employer who would escape the payment of liquidated damages a plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory burden." *Barcellona v. Tiffany English Pub, Inc.,* 597 F.2d 464 (5th Cir.1979). An employer cannot rely on ignorance alone as reasonable grounds for believing its actions were not in violation of the Act but rather "good faith requires some duty to investigate potential liability under FLSA." *Barcellona v. Tiffany English Pub, Inc., id.* at 468.

This opinion will serve as the Court's findings of fact and conclusions of law.

The Clerk is hereby directed to enter judgment in favor of the Plaintiffs and against the Defendant in the amount of $19,053.94 together with interest plus costs of this action. The judgment shall be awarded as follows:

| Robert Davis | $2961.66 |
|---|---|
| Curtis Hunter | $2173.78 |
| Edward Turner | $2581.90 |
| Moses Thomas | $2546.74 |
| Willie Washington | $2663.80 |
| Jessie Williams | $3131.30 |
| Maxwell Williams | $2994.76 |
| | $19053.94 |

IT IS SO ORDERED.

DONE and ORDERED at Orlando, Florida, this 26th day of April, 1983.

S/ Elizabeth A. Kovachevich
United States District Judge