**Louis Frank LEONARD, Plaintiff,**

v.

**CARMICHAEL PROPERTIES & MANAGEMENT CO., INC., Defendant.**

**No. 83–1156–Civ.**

United States District Court, S.D. Florida, Miami Division.

Aug. 8, 1985.

· Ira Kurzban, Kurzban & Kurzban, Miami, Fla., for plaintiff.

Henry Latimer, Richard J. Weiss, Fine Jacobson Schwartz Nash Block & England, Jeffrey H. Rosenthal, Resnick, Rosenthal & Weiss, Miami, Fla., for defendant.

## MEMORANDUM OPINION

EDWARD B. DAVIS, District Judge.

THIS ACTION to recover unpaid overtime compensation under the Fair Labor Standards Act of 1938, as amended ("FLSA" or "Act"), 29 U.S.C. § 201 *et seq.*, was tried without a jury. Jurisdiction is founded upon 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. After careful consideration of the evidence and testimony adduced at trial, post-trial memoranda submitted by the parties, and in light of the entire record in this cause, the court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Sabal Palm Villas ("Sabal Palm") is an apartment complex which is composed of five hundred twelve (512) units spread throughout one hundred twenty-eight (128) separate buildings. It is located in the northeast section of Miami, Florida, known as "Little Haiti."

Prior to July 1, 1981, plaintiff, Louis Frank Leonard, was employed to work at Sabal Palm by Southern Properties Services, Inc. ("Southern Properties"), a property management group. On July 1, 1981, defendant, Carmichael Properties and Management Company, Inc., replaced Southern Properties as the management company at Sabal Palm. During this transition, the former employees of Southern Properties were offered to continue in their same positions at Sabal Palm as employees of defendant. Plaintiff accepted defendant's offer.

Plaintiff was employed by defendant from July 1, 1981 through August 31, 1982. During his tenure, plaintiff had two job functions: a "day job" and a "night/weekend job."

The "day job" required plaintiff to perform general maintenance from 8:00 a.m. to 5:00 p.m. on weekdays. These duties consisted of, *inter alia*, "getting apartments ready" for new tenants as the old tenants moved out. His responsibilities included checking and cleaning the apartments and performing repairs. Plaintiff's work performance was good enough for him to be promoted from a maintenance and repair employee to supervisor of maintenance at Sabal Palm. For the day job, plaintiff was paid on an hourly basis and was fully compensated for overtime.

The "night/weekend job" required plaintiff, a resident of Sabal Palm, to be on call to, *inter alia*, perform emergency repairs from 5:30 p.m. to 8:00 a.m. on weekdays and all day Saturdays and Sundays. As part of the night/weekend job, plaintiff was also responsible for changing light bulbs throughout the common areas of the complex, which took approximately one hour of his time each weekday and every Saturday. On Sundays plaintiff was on call but did not change light bulbs.

Defendant required plaintiff to carry a telephone beeper so that he could be reached for emergency repairs on the night/weekend job. Defendant set up an after-hours emergency call system whereby residents could call the Sabal Palm answering service which would "beep" plaintiff. Plaintiff would then call the answering service which would notify him of the apartment number and nature of the call. Plaintiff also performed emergency repairs that were brought to his attention via his personal telephone. The calls for repairs were primarily to remedy emergency plumbing problems, i.e., broken water pipes, which required plaintiff to rapidly respond to the affected units at unpredictable times. Plaintiff stayed close to his home at Sabal Palm in order to respond to the calls on a timely basis. He was never given a vacation from the night/weekend

job but was allowed sick leave when necessary.

For the night/weekend job, plaintiff was paid in kind with a rent-free apartment having an approximate rental value of two hundred fifty dollars ($250) per month. The parties stipulated that between July 1981 and the termination date of August 31, 1982, plaintiff was paid on an hourly basis which varied from $5.75 to $6.75 per hour. (Joint Pretrial Stipulation, Par. 5.) Plaintiff was never compensated on an hourly basis for overtime he put in on the night/weekend job.

The arrangement that plaintiff would receive a rent-free apartment as compensation for the night/weekend job was initially approved by Louisa Quinn, Southern Properties' supervisor, in 1980. Testimony at trial conflicted as to the exact terms of this oral agreement. Plaintiff testified that overtime compensation was promised by Quinn in addition to the apartment. That pursuant to Quinn's instructions, he began keeping a record of those hours. James Henderson, who replaced Quinn at Southern Properties in 1980, and later became defendant's vice-president, testified that Quinn never informed him that plaintiff was to receive anything other than the apartment. Quinn did not testify. The agreement was never reduced to writing.

Plaintiff testified that he logged the hours spent on the night/weekend job in a personal notebook ("notebook") (Plaintiff's Exhibit 1), pursuant to Quinn's instructions and spent up to three hours per day changing light bulbs on weekdays and Saturdays. Further, that when he asked Henderson to pay overtime, Henderson refused and told plaintiff that if he quit the night/weekend job, he would lose the day job.

Gerald Batroni was a former day job co-worker of plaintiff's and resident of Sabal Palm. He testified that he saw plaintiff changing light bulbs, rushing to repair jobs, and carrying a ladder and tools during the evening hours.

Donald Carmichael, owner of defendant, testified that he hired some of Southern Properties' employees, including plaintiff, to manage Sabal Palm in July 1981. He further stated that plaintiff was furnished the apartment "in lieu of payment" of overtime. Henderson testified that he viewed the apartment as compensation for plaintiff's night/weekend job and that plaintiff never complained about working overtime.

Defendant did not maintain records of hours worked at night and on weekends by plaintiff. Although he was asked to leave the defendant's employ on August 19, 1982, plaintiff continued to work and was paid through August 31, 1982 for the day job.

On September 9, 1982, plaintiff filed a complaint for unpaid overtime compensation with the Wage and Hour Division, United States Department of Labor. (Defendant's Exhibit 2.) The exact disposition of the complaint is unknown.

## CONCLUSIONS OF LAW

The main issues raised by the facts herein are the appropriate method for reconstructing an employee's overtime hours where an employer has failed to keep proper records; whether an employer is entitled to a credit against overtime compensation where it fails to prove the cost of lodging; and whether liquidated damages are warranted where an employer pays an employee overtime compensation for one job function, but not for the employee's second job function.[1]

## RECONSTRUCTION OF EMPLOYEE'S HOURS

The test for determining the amount of overtime hours for which plaintiff is to be compensated is set forth in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). In *Anderson*, the Supreme Court established a shifting burden of proof for cases in which an employer's records of time worked are in-

---

1. Plaintiff was fully compensated for overtime with respect to the day job. Thus, the following conclusions relate solely to unpaid overtime compensation due plaintiff for the night/weekend job.

accurate or inadequate. The Supreme Court reasoned that in such cases, "The solution ... is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act." 328 U.S. at 687, 66 S.Ct. at 1192. In these cases, the employee must prove "that he has in fact performed work for which he was improperly compensated," *id.*, and must produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* The burden then shifts to the employer to come forward with evidence of the exact number of hours worked "or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.*

■ A prima facie case can be made through an employee's testimony giving his recollection of hours worked, *e.g., Reeves v. International Tel. & Tel. Corp.*, 616 F.2d 1342, 1351–52 (5th Cir.1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 857, 66 L.Ed.2d 800 (1981), although the court need not accept every element of the plaintiff's case simply because the employer fails to produce records. *Marshall v. Hope Garcia Lancarte,* 632 F.2d 1196, 1197–98 (5th Cir. 1980). A FLSA case is not to be dismissed nor should recovery be denied because proof of the number of hours worked is inexact or not perfectly accurate. *Marshall v. Mammas Fried Chicken, Inc.,* 590 F.2d 598, 599 (5th Cir.1979) (per curiam); *Mitchell v. Mitchell Truck Line Inc.,* 286 F.2d 721, 725–26 (5th Cir.1961). Where the inaccuracy is due to the employer's failure to keep adequate records as required by statute, 29 U.S.C. § 211(c), § 215(a)(5), and the employee has demonstrated that *some* work was performed for which he was improperly compensated, there is a right to recovery, even though the amount may be uncertain and damages difficult to calculate. *Hodgson v. Ricky Fashions, Inc.,* 434 F.2d 1261, 1263–64 (5th Cir.1970) (emphasis in original). Under these circumstances, the court may "award damages to the employee, even though the result be only approximate." *Anderson,* 328 U.S. at 688, 66 S.Ct. at 1193.

■ In its analysis, the court must make a preliminary finding as to whether plaintiff should be compensated for idle time. As in all approximation cases, "this is basically a fact question, to be gleaned from all the facts and circumstances of each case." *Armour & Co. v. Wantock,* 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944). "In determining whether idle time is compensable, two factors to be considered are whether the time is spent predominantly for the employer's or employee['s] benefit, and whether the time is of sufficient duration and taken under such conditions that it is available to employees for their own use and purposes disassociated from their employment time." *Blum v. Great Lakes Carbon Corp.,* 418 F.2d 283, 284 (5th Cir. 1969). The court rejects plaintiff's contention that he should be compensated on a twenty-four (24)-hour "on-call" basis, or in the alternative, for all "standby time" save for eating and sleeping. Contrary to the picture he has attempted to paint, plaintiff was not held hostage at Sabal Palm during his more than two years' employment. The testimony, including his own, shows that plaintiff was free to come and go as he pleased; that he, *inter alia,* went grocery shopping, attended church, and entertained friends while "on call." Surely, plaintiff's shopping and entertaining was for his own benefit and disassociated from employment time. Based on the facts presented at trial, particularly the fact that plaintiff was largely unfettered except for hours actually worked, the court concludes that plaintiff's idle time while waiting for emergency calls is not compensable for overtime under the Act. *E.g., Brennan v. Williams Investment Co., Inc.,* 390 F.Supp. 981 (W.D. Tenn.1975); *Petrlik v. Community Realty Company,* 347 F.Supp. 638 (D.Md.1972).

■ The court must now consider whether plaintiff is entitled to overtime compensation in light of the *Anderson* standard. Upon review of the facts adduced at trial, the court finds that plaintiff has met his burden by demonstrating he performed work for which he was not compensated, and producing sufficient evidence which shows the extent of that work. Plaintiff has done so via the testimony and his notebook of emergency hours worked. On the other hand, defendant has failed to come forward with evidence of the exact number of hours worked or with proof to negate the reasonableness of the inference drawn from plaintiff's evidence. Rather than rebutting plaintiff's evidence, the testimony of defendant's principal, Don Carmichael, and former vice-president, James Henderson, corroborates plaintiff's claim. Indeed, both Carmichael and Henderson testified that plaintiff did in fact work the night/weekend job and that he was furnished an apartment "in lieu of payment" for these overtime hours. Plaintiff's testimony is further bolstered by former co-worker and Sabal Palm resident, Gerald Batroni, who stated that he witnessed plaintiff changing light bulbs and responding to emergency calls during the evenings and on weekends. In essence, the trial revealed that there is no dispute as to whether plaintiff did in fact perform the night/weekend job. Instead, the issue has become the number of overtime hours for which plaintiff is entitled to compensation under the Act.

Considering all the evidence, the court holds that it is just and reasonable to reconstruct the hours worked by accepting the emergency call hours contained in the notebook and allowing one hour per day (except Sundays) for changing light bulbs. The court finds one hour per day, as opposed to plaintiff's claim of three hours, for light-bulb changing to be reasonable due to plaintiff's inability to provide more specific starting and stopping times. Likewise, one hour is reasonable because it took between twenty (20) and thirty (30) minutes just to walk the property. In light of the foregoing, the court finds that plaintiff is entitled to overtime compensation for hours actually worked.[2]

## CREDIT AGAINST OVERTIME COMPENSATION

■ Defendant asserts that it is entitled to a credit against plaintiff's overtime based on the retail value of an apartment furnished to plaintiff while employed at Sabal Palm. Defendant sets the retail value of the apartment at a flat two hundred fifty dollars ($250) per month, apparently not allowing for any rental increase or decrease during plaintiff's tenure. Section 3(m) of the FLSA, 29 U.S.C. § 203(m), allows employers to include the reasonable cost of meals, lodging, or other facilities in employee wages for purposes of the Act. The regulations promulgated by the Secretary of Labor require employers to keep certain records of the cost incurred furnishing board, lodging or other facilities, 29 C.F.R. § 516.27(a), and also require the employer to maintain, on a work-week basis, records reflecting additions to wages or deductions from wages for board, lodging, or other facilities. *Id.* § 516.28(b). The regulations define "reasonable cost" to be not more than the actual cost to the employer of the board, lodging, or other facilities customarily provided by him to his employees. *Id.* § 531.3(a). " 'Reasonable cost' does not include a profit to the employer or any affiliated person." *Id.* § 531.3(b).

■ The employer has the burden of showing that it is entitled to the credits claimed under § 3(m) of the Act. *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 473–76 (11th Cir.1982). Here the court finds defendant has not met that burden. It is impossible for the court to determine what was the reasonable cost of the apart-

---

**2.** The FLSA provides in pertinent part that "[n]o employer shall employ any of his employees ... for a workweek longer than forty hours ... unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a).

ment because defendant has failed to proffer any evidence as to the expenses of providing it for plaintiff.[3] Furthermore, at trial and in its post-trial memorandum, defendant insists that the retail value, rather than cost, is the appropriate measure. (See Defendant's Exhibit 6.) The court finds defendant's argument unpersuasive.

This is not to say that the facilities furnished had no value. However, to separate the reasonable cost of the apartment from the total cost plus profit "would require the court to speculate on the basis of an inadequate and inaccurate record. Under these circumstances, the *New Floridian* case requires that the defendant be denied credit for the [apartment]." *Washington v. Miller*, 721 F.2d 797, 803 (11th Cir.1983) (per curiam); *See also Davis Bros., Inc., v. Donovan*, 700 F.2d 1368 (11th Cir.1983).

## LIQUIDATED DAMAGES

In addition to unpaid overtime compensation, plaintiff seeks an equal amount of liquidated damages under Section 11 of the Portal to Portal Act, 29 U.S.C. § 260. Defendant, citing its good faith and that it had reasonable grounds for believing nonpayment of overtime was not a violation of the FLSA, contends there is no basis for the assessment of liquidated damages under 29 U.S.C. § 216(b). The court disagrees. Section 11 of the Portal to Portal Act imposes "upon .the employer who would escape the payment of liquidated damages a plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 468 (5th Cir. 1979). The law in this circuit provides that

there is a presumption of defendant's willful violation, "absent positive and compelling proof of good faith." *Reeves*, 616 F.2d at 1353. Knowledge will generally be imputed to the offending employer. *Id.* It is not enough to plead and prove ignorance of the overtime requirements. *Id.* Nor does complete ignorance of the possible applicability of the Act shield the employer from liability for liquidated damages. *Id.* "[G]ood faith requires some duty to investigate potential liability under the FLSA." *Washington v. Miller*, 721 F.2d at 804; *Barcellona*, 597 F.2d at 469.

In the instant case, the evidence is insufficient to demonstrate that defendant's failure to pay overtime wages in accordance with the Act was in reasonable good faith. Defendant did not present evidence which even hinted it attempted to investigate its liability under the FLSA. In its post-trial memorandum, defendant contends it acted in good faith because its first encounter with the Wage and Hour Division was in response to the complaint filed by plaintiff, and that it was never advised of the complaint's disposition. The court finds these reasons inapposite to the good faith defense. Plaintiff was paid through August 31, 1982. The complaint was filed September 9, 1982. Clearly the implication that defendant relied in good faith on the Department of Labor's silence during plaintiff's tenure is without merit. Equally without merit is defendant's claim of good faith because it inherited plaintiff's arrangement from Southern Properties, for "[e]ven inexperienced businessmen cannot claim good faith when they blindly operate a business without making any investigation as to their responsibilities under the labor laws. Apathetic ignorance is never the basis of a reasonable belief." *Barcellona*, 597 F.2d at 469.[4]

---

**3.** Both § 3(m) of the FLSA and the regulations provide for requests by employers for a determination of reasonable cost by the Administrator of the Wage and Hour Division. The regulations, 29 C.F.R. § 531.4(a), establish a specific procedure to facilitate such determinations. The burden of invoking the administrator's assistance is on the employer. *New Floridian Ho-*

*tel, Inc.*, 676 F.2d at 475, n. 13. Where, as here, the employer has failed to comply with the record-keeping provisions, 29 C.F.R. § 516.27, and there has been no determination of reasonable cost by the Wage and Hour Division, the employer does not satisfy its burden. *Id.* at 475.

**4.** In its post-trial memorandum, defendant lists seven other reasons for its failure to pay over-

Lack of good faith is demonstrated when an employer "knows, or has reason to know" that his conduct is governed by the Act. *Reeves*, 616 F.2d at 1353. Here, defendant wants the court to believe it knew the Act's provisions governed the day job, but not the night/weekend job. This proposition is unacceptable. In light of the entire record, especially its payment of overtime for the day job, the court finds implausible defendant's assertion that it did not know or, at a minimum, did not have reason to know, that overtime compensation was required for the night/weekend job under the Act. Accordingly, pursuant to 29 U.S.C. § 260, plaintiff shall be awarded liquidated damages in the additional amount equal to his award of unpaid overtime compensation.

## CONCLUSION

The court finds that plaintiff was not paid for one thousand three hundred sixty-five (1,365) hours he worked at the night/weekend job and, thus, is entitled to overtime compensation in the amount of twelve thousand five hundred forty-four dollars and twenty-nine cents ($12,544.29), plus liquidated damages in an equal amount, for a total of twenty-five thousand eighty-eight dollars and fifty-eight cents ($25,088.58), together with post-judgment interest and costs.

## APPENDIX

The parties stipulate that, "Between July 1981 and termination date of August 31, 1981, the plaintiff had an hourly rate which varied from $5.75 to $6.75 per hour." (Joint Pretrial Stipulation, Par. 5.)[5] The following calculations are based on the wage information provided by defendant insofar as it comports with the Joint Pretrial Stipulation. (Defendant's Exhibit 3.) The award is based on the period from July 1, 1981 through August 31, 1982.[6]

July 1, 1981—March 18, 1982 ($5.75 per hour)

| | | |
|---|---|---|
| Emergency call notebook: | 643 hours × $ 8.65 = | $ 5,561.95 |
| Light bulb changing: | 224 hours × $ 8.65 = | $ 1,937.60 |

March 19, 1982—August 31, 1982 ($6.75 per hour)

| | | |
|---|---|---|
| Emergency call notebook: | 356 hours × $10.13 = | $ 3,606.28 |
| Light bulb changing: | 142 hours × $10.13 = | $ 1,438.46 |

| | |
|---|---|
| Total Unpaid Overtime Compensation: | $12,544.29 |
| Liquidated Damages: | $12,544.29 |
| Total Due Plaintiff: | $25,088.58 |

time, none of which speaks directly to its duty to investigate potential liability under the FLSA.

5. At trial, defendant attempted to repudiate the stipulation and, for the first time, asserted that plaintiff was paid a salary for the night/weekend job, rather than on an hourly basis. The court rejects defendant's attempt to deviate from the stipulation and finds the parties are bound by it. Fed.R.Civ.P. Rule 16; *Mary S. Krech Trust v. Lakes Apartments*, 642 F.2d 98, 101 n. 6 (5th Cir. Unit B 1981); Local Rule 14D.

6. Plaintiff seeks to recover overtime compensation for the period from May 1, 1980 through August 31, 1982 on the theory that defendant, Southern Properties, and Sabal Palm constitute an enterprise under the Act, 29 U.S.C. § 203(r). Upon review of the evidence, the court finds that plaintiff has failed to demonstrate the elements that must co-exist for entities to be considered a single enterprise. *See e.g., Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512, 513, 93 S.Ct. 1138, 1139, 35 L.Ed.2d 463 (1973); *Brennan v. Veterans Cleaning Service, Inc.*, 482 F.2d 1362 (5th Cir.1973).