Kurt W. BOND, et al., Plaintiffs,

v.

CITY OF JACKSON,
MISSISSIPPI, Defendant.

Civ. A. No. J88–0186(W).

United States District Court,
S.D. Mississippi,
Jackson Division.

Nov. 22, 1989.

Elizabeth Gilchrist, Jackson, for plaintiffs.

Matthew Moore, City Atty., Jackson, for defendant.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

This cause is before the court on the propriety of awarding plaintiffs liquidated damages against the City of Jackson, Mississippi (hereinafter The City), pursuant to 29 U.S.C. §§ 216(b) and 260, after the plaintiffs have prevailed in their lawsuit which alleged that The City had violated various provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.* Plaintiffs, certain current and former employees of the City of Jackson Fire Department, Emergency Medical Services Division (hereinafter EMS Division), brought their lawsuit before the court pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.*, seeking back pay, liquidated damages, and injunctive and declaratory relief. Jurisdiction was predicated upon 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337. Declaratory relief was sought under 28 U.S.C. §§ 2201 and 2202.

On an earlier day, this cause went to trial, whereupon a jury returned a verdict in favor of plaintiffs on their claim for unpaid overtime compensation. Against plaintiffs' claim, The City argued that plaintiffs had been properly compensated for overtime at a corresponding lesser rate because plaintiffs were "fire protection employees," as defined by pertinent federal law and accompanying regulations and, thus, were exempt from 40–hour per week

overtime payment requirements. Having lost the issue at trial and now confronted with the spectre of liquidated damages, The City now must show that its position was rooted in good faith and based upon reasonable grounds to believe it was not violating the FSLA. Having heard the evidence adduced at trial and having examined the authorities, the court is persuaded that The City has met its burden of proof and that liquidated damages are not here appropriate. The reasons prompting this holding are set out below.

### Facts

Prior to October, 1985, the City of Jackson staffed ambulances with part-time firefighters who had training as emergency medical technicians. In October, 1985, The City decided to upgrade its level of emergency medical care and established the Emergency Medical Service and staffed the division with full-time city personnel. At first, The City staffed this division from the ranks of its firemen, with The City paying for any advanced training. Subsequently, The City began hiring previously qualified personnel from the private sector. Each of these plaintiffs was trained and licensed as an Emergency Medical Technician (EMT), in one of three classification levels, prior to employment.

At trial, plaintiffs offered testimony that they were not employees engaged in "fire protection activities" because they had not received fire-fighting training, because they were not provided fire-fighting equipment, and because they were not normally dispatched whenever fire-fighting personnel and equipment were dispatched. The proof showed that ambulances which are equipped to provide life support services and transportation, but are not equipped for fighting fires, were dispatched to fires or other disasters only upon the occurrence of medical emergencies. Plaintiffs also showed that although the EMS Division is organizationally and physically located within the Jackson Fire Department, the EMS Division has a separate pay scale, separate professional classifications, separate fringe benefits, and a separate promotion and career development plan. The proof also showed that the EMS Division has separate and distinct uniforms, patches, and badges.

The City relied upon federal regulation 29 C.F.R. § 553.215, which exempts "fire protection employees" from the 40–hour work week, and defines as "fire protection employees" those persons who:

(a) have received training in the rescue of fire, crime and accident victims as firefighters or law enforcement personnel injured in the performance of their respective duties; and

(b) are regularly dispatched to fires, crime scenes, riots, natural disasters, and accidents.

As part of its interpretation of this law, The City offered in support an October 9, 1987, Letter Ruling of the Department of Labor, Wage and Hour Division. The letter ruling opined that to meet the requirements of 29 C.F.R. § 553.215, employees must "be trained to 'rescue' individuals who have been injured or who are in imminent danger or harm by the most expeditious means." The letter defined "trained to rescue" as involving knowledge of basic lifesaving procedures and life-support procedures (i.e., CPR, administering oxygen, and extrication techniques), although, described the letter, it is not necessary for an [employee] to routinely perform any or all of these procedures in order to meet the requirements of the first test referred to above. According to the letter ruling, "an [employee] need not be trained in fire-suppression or evacuation procedures in order to be engaged in activities which are substantially related" to fire-fighting or law enforcement. The letter ruling opined that the second prong of the "substantially related" test, the requirement that the employees be "regularly dispatched" to such things as fires and crime scenes is not a specific frequency but must be determined according to the facts of each individual case. The ruling reiterated a previous letter ruling stating that "if more than 50% of the fire protection/law enforcement callouts during the applicable work period are calls related to fires, the [employees] who are properly trained and regularly dis-

patched would qualify as 'fire protection' employees."

Plaintiffs took issue with The City relative to their training to rescue at fires. Whereas they acknowledged that they were trained to provide life-saving procedures, i.e., CPR and the administering of oxygen, they quarreled with The City whether they had uniform training in the ranks on extrication training. Extrication is a broad term which addresses the removal of accident victims from trapped situations. A regular tool used in extrication is the "jaws of life"; a hydraulic tool used to remove crushed metal, usually in car accidents.

City job descriptions for paramedics, EMTs, and Intermediate EMTs were admitted as Plaintiffs' Exhibits P–2 through P–4. Each job description indicated that these employees had work duties which included "Extricat[ing] accident victims from damaged motor vehicles."

However, plaintiffs who testified professed various levels of training concerning extrication. Testimony showed that The City initially hired its emergency medical services employees from among the department's EMTs who staffed emergency rescue units and who had extensive training in firefighting and extrication techniques. But, it appears that plaintiffs not hired from among the ranks of city firemen EMTs had little advanced training in the use of extrication devices such as the "jaws of life." The City EMS Division coordinator, Jeff Forster, testified that paramedics and EMTs assigned to the ambulances are most concerned with the victim's health and, thus, would not likely be involved in extrication beyond assuring that a victim can be moved.

Convinced that the issues were in equipoise, the court submitted the case to the jury. The jury then resolved the factual exemption issue in favor of plaintiffs, finding that they were not employees engaged in fire protection activities.

The parties have stipulated to the amount of unpaid overtime compensation due plaintiffs as a result of the jury's determination. However, plaintiffs also seek liquidated damages in an amount equal to the unpaid compensation. The City contends any award of liquidated damages is unwarranted. For the reasons set forth below, this court agrees with The City and finds that liquidated damages are unwarranted.

### Law

Title 29 U.S.C. § 216(b) provides in pertinent part that:

> "Any employer who violates the provisions of ... of this title shall be liable to the ... employees affected in the amount of their unpaid ... overtime compensation ... and in an additional equal amount as liquidated damages."

An amendment to the Fair Labor Standards Act found in 29 U.S.C. § 260 palliates the strict liability seemingly imposed by § 216(b). Section 260 provides that:

> In any action commenced prior to or on or after May 14, 1947, to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended [29 U.S.C.A. § 201 et seq.], if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

■ While § 260 was designed to mitigate the harshness of § 216(b), the enactment still erects a barrier over which an employer must clear in order to be relieved of liability for liquidated damages. Pursuant to this enactment, an employer must demonstrate both good faith and reasonable grounds for believing that it was not violating the Act. *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1263 (5th Cir. 1986). The employer bears the burden of proving both elements. *Reeves v. International Tel. & Tel. Corp.*, 616 F.2d 1342,

1352 (5th Cir.1980); *Barcellona v. Tiffany English Pub, Inc.,* 597 F.2d 464, 468 (5th Cir.1979). Employers do not satisfy this burden by pleading ignorance, *LeCompte,* 780 F.2d at 1263; *Barcellona,* 597 F.2d at 468–69, as good faith requires some duty to investigate potential liability under the Fair Labor Standards Act. *Barcellona,* 597 F.2d at 469. On the other hand, "lack of good faith is demonstrated when an employer 'knows or has reason to know, that his conduct is governed by the [Act].'" *Reeves,* 616 F.2d at 1353 (quoting *Brennan v. Heard,* 491 F.2d 1, 3 (5th Cir.1974)). A reasonable belief may be found, for instance, where the employer purposefully "engaged in act proven to be violations but did so under a mistaken belief that its acts were in conformity with the law." *Martinez v. Food City, Inc.,* 658 F.2d 369, 658 (5th Cir.1981). The Court's statement in *Martinez* was based upon the case of *Reed v. Murphy,* 232 F.2d 668, 678 (5th Cir.), cert. denied, 352 U.S. 831, 77 S.Ct. 45, 1 L.Ed.2d 51 (1956), where the Court found liquidated damages unwarranted because a government contractor reasonably relied upon an incorrect interpretation of the FSLA contained in an overtime compensation directive from the project contracting officer. The Court noted that refusal to abide by the directive might have subjected the contractor to contract damages. Thus, the violation resulted from adherence to a specific directive which turned out to be incorrect.

Section 260 grants to the district court discretion on two levels. First, if the employer produces sufficient evidence, the district court has discretion to find in favor of the employer on the issue of good faith and reasonable belief. Second, "even if the employer introduces evidence supporting a 'good faith and reasonable belief' defense, the trial court may still, in its discretion, award liquidated damages." *Peters v. City of Shreveport,* 818 F.2d 1148, 1167 (5th Cir.1987).

■ Applying these juridical directives to the facts in *Bond,* this court holds that the City of Jackson exercised good faith in a reasonable belief that its payment to paramedics in the EMS Division met applicable standards. First, there was and is no clear legal precedent which would have advised The City that its conduct was manifestly condemned under the law. Second, the standards as found in the regulations are somewhat ambiguous, and the only attempted clarification by the Department of Labor, found in an opinion letter dated October 9, 1987, sheds little light on the troubling regulations. Third, at trial the court was convinced that application of the regulations to these individual plaintiffs presented a question of fact which required resolution by a jury. So, considering the lack of precedent, the ambiguous standards and what this court perceived as a fact-intensive issue, the court finds that The City has met its burden. In view of this finding, the court declines to award any liquidated damages to the plaintiffs.

■ Also before the court is the matter of attorney fees. The plaintiffs have prevailed on their Fair Labor Standards Act claim and are entitled to recover attorney fees pursuant to 29 U.S.C. § 216(b). *Diaz v. Robert Ruiz, Inc.,* 808 F.2d 427, 429 (5th Cir.1987). Section 216(b) states that "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." Inasmuch as The City has not contested the reasonableness of the fees submitted by plaintiffs' counsel, the court hereby grants attorney fees in the amount of $11,725.00 and costs in the amount of $574.85.

SO ORDERED AND ADJUDGED.