Leonardo ESPINOZA, Maria Espinoza, Guadalupe Espinoza, Juan Garcia, Amada Garcia, Nestor Garcia, Plaintiffs-Appellees,

v.

STOKELY–VAN CAMP, INC., Defendant-Appellant.

No. 80–1597.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 8, 1980.

Decided Feb. 26, 1981.

Herbert C. Snyder, Jr., Indianapolis, Ind., for defendant-appellant.

F. Thomas Hecht, Illinois Migrant Legal Assistance Project, Chicago, Ill., for plaintiffs-appellees.

Before BAUER and CUDAHY, Circuit Judges, and BARTELS, Senior District Judge.*

BARTELS, Senior District Judge.

This is an appeal from a judgment entered in the Northern District of Illinois (Hoffman, J.) in favor of the plaintiffs against the defendant-appellant for violation of the Farm Labor Contractor Registration Act ("FLCRA"), 7 U.S.C. §§ 2041 *et seq.*, and the Wagner-Peyser Act, 29 U.S.C. §§ 49 *et seq.*

The action was instituted by six members of two farmworker families ("farmworkers") against Stokely-Van Camp ("Stokely"), which employed them for the 1978 asparagus harvest in Rochelle, Illinois. In substance, the farmworkers claimed and the district court held that Stokely had violated both the FLCRA and the Wagner-Peyser Act by failing to provide effective disclosure of the tentative nature of the starting date of the employment offered to them. The facts are largely undisputed. The questions presented primarily involve construction of the two statutes.

* The Honorable John R. Bartels, Senior United States District Judge for the Eastern District of New York, sitting by designation.

## I

### FACTS

The farmworkers reside in Texas, are Spanish-speaking, and neither read nor speak English. Stokely is an Indiana corporation engaged in farming, processing and selling agricultural products in Illinois. In the early months of 1978, Stokely sought migrant workers for its agricultural operations in Rochelle, Illinois. In connection with its recruitment efforts, Stokely obtained certification as a farm labor contractor pursuant to the Farm Labor Contractor Registration Act, 7 U.S.C. § 2044. Stokely also participated in the interstate recruitment system operated by the United States Employment Service in conjunction with state employment agencies pursuant to the Wagner-Peyser Act and attendant regulations. 20 C.F.R. §§ 653.100 *et seq.*

The FLCRA imposes upon labor contractors a duty to disclose to potential employees a full description of the terms and conditions of employment, including a starting date, "in writing in a language in which the worker is fluent, and written in a manner understandable by such workers...." 7 U.S.C. § 2045(b). To participate in the federally funded national labor exchange set up under the Wagner-Peyser Act, employers like Stokely submit "clearance orders" to their State's employment agency, describing the terms of employment offered. After attempting to fill the job locally, the state agency circulates the clearance order to other state employment agencies for distribution to job recruiters and employment service personnel. 20 C.F.R. § 653.108. In this case Stokely prepared a clearance order describing the terms and conditions of employment it was offering for its Rochelle asparagus harvest in Illinois, and it was submitted to the state employment agencies for referral in February 1978. The job clearance order, which was in English, accurately described the employment being of-

fered, including an approximate starting date of April 28, 1978, reading as follows: "[W]eather conditions may occasionally delay, advance or shorten the period of employment. Dates of employment are not guaranteed."

As an employer of migrant labor, Stokely was also required by Illinois law to file another form, Illinois State Employment Service ("ISES") form 560–C, describing the job it was seeking to fill "in English and in the language in which the farmworker is fluent." Ill.Ann.Stat. ch. 48 § 184.1 (1977). The 560–C form was the only employment disclosure form prepared in Spanish by Stokely and it was required to be given to the farmworkers. It provided, without qualification, for a starting date of April 28, 1978.

In the spring of 1978 Stokely, through the Texas Employment Commission and also through agents, contacted farmworkers and offered them work for the asparagus harvest in Illinois. Albert Solis was in Texas as Stokely's representative and had a meeting with the farmworkers at which the farmworkers were given copies of the 560–C form and signed employment contracts written both in English and Spanish. These contracts provided that the terms of employment were as described in either the clearance order or the 560–C form. Above the signatures the contracts also included a clause stating that the signer had read or had explained to him the terms and conditions set forth in the clearance order. On April 26 Solis told the farmworkers to proceed to Illinois immediately. After driving for two days, the farmworkers arrived in Rochelle on the evening of April 28. There was no work for them, however, until May 29. Receiving no pay during this time, the plaintiffs sought emergency assistance from various social service agencies.

On August 30, 1978, the farmworkers filed a complaint in the United States District Court for the Northern District of Illinois, seeking damages and declaratory relief in each of two counts. The first count was predicated upon an alleged violation of the FLCRA, and the second upon an alleged violation of the Wagner-Peyser Act. Each was based on the same facts, and claimed, *inter alia*,[1] that Stokely had failed to provide the plaintiffs with employment as represented in that work did not commence within 48 hours of their arrival, but in fact ten days later.

The case being tried without a jury, the district court found that the clearance order filed by Stokely pursuant to the Wagner-Peyser Act had accurately indicated the tentative nature of the starting date for work. However, it also found that Stokely had violated both acts because the plaintiffs had relied upon the 560–C form, the only Spanish language document provided them by Stokely, which indicated an unqualified starting date of April 28, 1978. Declaratory relief was denied, but judgment was entered on March 28, 1980, awarding to each plaintiff $500 in "liquidated damages" under the FLCRA, and $53 in actual damages under the Wagner-Peyser Act.[2]

Stokely seeks reversal of the judgment on the grounds that: 1) liquidated damages may not, as a matter of law, be awarded under the FLCRA; and 2) it did not violate the Wagner-Peyser Act.

## II

### DISCUSSION

*Farm Labor Contractor Registration Act*

The FLCRA provides in pertinent part that:

1. The complaint also alleged that defendant promised but did not provide at least 25 hours of work per week, and housing complying with federal and state regulations, and sought declaratory relief as well as damages. The district court ruled against the plaintiffs on these allegations, and denied the request for declaratory relief. Plaintiffs have not appealed from this aspect of the court's decision.

2. The district court calculated that the plaintiffs began work eight days later than was represented, but worked four days longer than was represented, so that they were deprived of four working days of an estimated minimum of five hours per day, at $2.65 an hour.

If the court finds that the respondent has intentionally violated any provision of this chapter or any regulation prescribed hereunder, it may award damages up to and including an amount equal to the amount of actual damages, *or* $500 for each violation, or other equitable relief.

Farm Labor Contractor Registration Act Amendments of 1974, § 12, 7 U.S.C. § 2050a(b) (1974) (emphasis supplied).

For the purpose of this appeal, Stokely has conceded liability under the FLCRA. It contends, however, that the award of liquidated damages of $500 per person to the plaintiffs was unlawful in the absence of actual damages to them.[3]

The crucial question of interpretation is whether the farmworkers must show actual damages of $500 from the violation of the act before they may be awarded $500 per person. It is axiomatic that the above provision of the FLCRA must be construed to effectuate the Congressional intent, and this can best be ascertained from the language of the statute. *United States v. American Trucking Ass'ns*, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940); *Busse v. C.I.R.*, 479 F.2d 1147, 1151 (7th Cir. 1973). Examining the statutory language, the disjunctive word "or" separating the clause providing for actual damages and the clause "$500 for each violation" indicates, it seems to us, that the two forms of relief are distinct alternatives. *Azure v. Morton*, 514 F.2d 897, 900 (9th Cir. 1975). Moreover, this reading of the statute is consistent with the remedial purpose of the act as a whole and the legislative history of the 1974 amendments in particular.

The FLCRA of 1963 was enacted in large part as a response to the exploitation and abuse of migrant farmworkers by labor contractors. S.Rep.No.202, 88th Cong., 2d Sess., *reprinted in* [1964] U.S.Code Cong. &

Admin.News 3690, 3691–93; 7 U.S.C. § 2041 (1964). By 1974, however, it had become clear to Congress that the 1963 act had "failed to achieve its original objectives." S.Rep.No.93–1295, 93rd Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin. News 6441, 6443. Among the reasons Congress found the original act ineffective were the mildness of the penalties provided for violations and the absence of a private remedy for aggrieved parties. *Id.*

Section 13 of the 1974 amendments added substantially to the penalty provision of the act, providing for a $500 fine or one year's imprisonment, or both, for an intentional offense. Subsequent violations were made punishable by a fine up to $10,000, or three years' imprisonment, or both. The civil fine for violations was increased to $1,000. 7 U.S.C. § 2048 (1974).[4] Section 12 of the 1974 amendments added the provision for a private cause of action which is in issue here.

Stokely relies primarily on the legislative history of the 1974 amendments in arguing that Congress did not intend private individuals to recover liquidated damages under the Act. The original version of the amendments was passed in the House on May 7, 1974 as H.R. 13342. Section 17 of that bill created a private remedy allowing declaratory and injunctive relief, as well as damages "up to and including $500 for each and every violation." The Senate amended this portion of the bill to provide that the district court could award damages "up to and including an amount equal to three times the amount of actual damages, reinstatement or other equitable relief, and a reasonable sum for attorney's fees and court costs . . . ." 120 Cong.Rec. 33744. This version was in turn rejected by the House. Both houses ultimately agreed on a private remedy provision virtually identical to that ultimately enacted.[5]

---

**3.** The issue of statutory construction presented by this appeal is the same whether plaintiffs proved no damages, or damages in an amount less than $500 each.

**4.** Section 9 of the Farm Labor Contractor Registration Act of 1963, 7 U.S.C. § 2048 (1964),

punished willful violations by a farm labor contractor with a maximum $500 fine.

**5.** H.R. 13342 was vetoed by the President. 120 Cong.Rec. 36246–47 (1974). The present amendments became law when Congress en-

That the House and Senate at first disagreed on the scope of private relief to be afforded under the FLCRA in no way supports Stokely's construction of section 2050a(b). In fact, the sequence of events suggests a contrary inference, indicating that Congress weighed alternative approaches before enacting the present provision. Stokely points out that the Senate Labor and Public Welfare committee report on the 1974 amendments described the private relief available under § 2050a(b) as follows:

> The Court may appoint an attorney for such [aggrieved] person and award damages *up to* $500 for each violation or other equitable relief.

S.Rep.No.1295, 93rd Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin.News 6441, 6450 (emphasis added).

■ While this committee report accompanying legislation is entitled to serious consideration in construing the statute, it cannot overcome the literal meaning of the language employed in the statute, which apparently is to the contrary. *In re Evans*, 452 F.2d 1239, 1245 (D.C.Cir.1971) (Bazelon, J.), *cert. denied*, 408 U.S. 930, 92 S.Ct. 2479, 33 L.Ed.2d 342 (1972). This is not a case where the literal meaning of the statutory language is inconsistent with the Congressional purpose. *United States v. Campos-Serrano*, 404 U.S. 293, 92 S.Ct. 471, 30 L.Ed.2d 457 (1971). In fact, construing section 2050a(b) to permit liquidated damages of $500 for each violation of the act furthers the Congressional intent of strengthening its enforcement.[6] In such circumstances, there is no reason to depart from a literal interpretation of section 2050a(b). *See In re Trans Alaska Pipeline Cases*, 436 U.S. 631, 98 S.Ct. 2053, 56 L.Ed.2d 591 (1978); *Chicago Transit Authority v. Adams*, 607 F.2d 1284 (7th Cir. 1978), *cert. denied sub nom. Chicago Transit Authority*

*v. Goldschmidt*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *Hall v. Sec'y of HEW*, 600 F.2d 556 (6th Cir. 1979).

*Wagner-Peyser Act*

Stokely appeals from the district court's holding that it violated the Wagner-Peyser Act, asserting that the trial judge erred in: 1) finding that the contents of the clearance order were not effectively disclosed to the plaintiffs, and accordingly that the migrant farmworkers had relied on the work starting date indicated in form 560–C; and 2) holding Stokely liable despite its compliance with the act and all applicable regulations.

■ The district court's fact-finding has substantial weight on appeal. *Holsapple v. Woods*, 500 F.2d 49 (7th Cir.), *cert. denied*, 419 U.S. 901, 95 S.Ct. 185, 42 L.Ed.2d 147 (1974), and the inferences that the trial judge drew from the evidence cannot be disturbed unless clearly erroneous. *Century Indem. Co. v. Serafine*, 311 F.2d 676 (7th Cir. 1963). At trial there was testimony indicating that the farmworkers' native language is Spanish and that they neither speak nor read English. It is undisputed that the clearance order prepared by Stokely pursuant to the Wagner-Peyser Act, although accurate, was not in Spanish, while the 560–C form given to the workers on April 26 was in Spanish and stated without qualification a starting date of April 28. Stokely admits that its agent in Texas, Albert Solis, on April 26 told the farmworkers that work was available and that they should depart immediately for Illinois. Based on the above evidence, it was not error for the district court to find that the farmworkers had not had the terms of the clearance order effectively disclosed to them, and that they had relied on the 560–C form's starting date.

Stokely's second contention is that it cannot be found liable to the plaintiffs under

---

acted S. 3202. 120 Cong.Rec. 37042, 37376 (1974).

**6.** A number of district courts have noted that the award of liquidated damages under the Farm Labor Contractor Registration Act furthers the remedial purpose of the Act. *Aranda v. Pena*, 413 F.Supp. 849 (S.D.Fla.1976); *De-Leon v. Ramirez*, 465 F.Supp. 698, 706 (S.D.N.

Y.1979); *Strong v. Williams*, 89 L.C. ' 33,929 (M.D.Fla.1978); *see also Wheeler v. King*, 88 L.C. '' 33,909 (S.D.N.Y.1980); *Rodriguez v. Isaguirre*, 88 L.C. '' 33,910 (N.D.Ind.1979); *Davis v. Fletcher*, 88 L.C. '' 33,693 (M.D.Fla.1978); *Guerrero v. Garza*, 464 F.Supp. 509 (W.D.Wis. 1978).

the Wagner-Peyser Act, as it fully complied with the act and attendant regulations by filing an accurate clearance order. The trial judge found that the act had been violated because Stokely had misrepresented the tentative nature of the starting date in the 560–C form and through the statements of its agent, Solis.

Substantial responsibility for the operation of the national labor exchange created by the Wagner-Peyser Act is placed upon the participating state employment agencies which are required to comply with guidelines set out, for the most part, in regulations enacted pursuant to the act. 29 U.S.C. §§ 49 *et seq.*; 20 C.F.R. §§ 653.100 *et seq.* The regulations provide, among other things, that a job offer (clearance order) may not be circulated interstate unless the employer has signed a statement on the order certifying that the job offer states all the material terms and conditions of employment, including the anticipated period and hours of employment, the anticipated starting date of the employment and the anticipated number of weeks and days thereafter for which work will be available. 20 C.F.R. §§ 653.108(c)(2)–(3) & (d). In contrast to the FLCRA, the Wagner-Peyser Act does not require the clearance order to be in a language in which the farmworker is fluent. Nor does it place upon the employer the burden of disclosing the order's terms to workers being recruited. However, it is by now well settled that an employer of migrant labor may be held liable to aggrieved farmworkers if it files a clearance order that misrepresents the terms and conditions of employment offered. *See, e. g., Gomez v. Florida State Employment Service,* 417 F.2d 569 (5th Cir. 1969); *Galindo v. Del Monte Corporation,* 382 F.Supp. 464 (N.D.Ill.1974); *Abraham v. Beatrice Foods Co.,* 418 F.Supp. 1384 (E.D. Wis.1976); *Jenkins v. S & A Chaissan & Sons, Inc.,* 449 F.Supp. 216 (S.D.N.Y.1978).

In this case, the clearance order was accurate, as the trial judge specifically found. But Stokely misled the plaintiffs by its subsequent oral and written representations. It seeks to insulate itself from liability by pointing to its technical compliance with the regulations concerning the contents of clearance orders. Yet it is obvious that the regulations are intended to ensure accurate disclosure of job terms to migrant workers like the plaintiffs in this case, who often travel many hundreds of miles in response to clearance orders. *Gomez v. Florida State Employment Service,* 417 F.2d at 576; *Galindo v. Del Monte Corporation,* 382 F.Supp. at 469. That purpose would be undercut if employers could evade liability by filing an accurate clearance order, while thereafter making misleading oral or written representations to the workers describing different starting dates or more attractive working conditions. In *De La Fuente v. I.C.C.,* 451 F.Supp. 867 (N.D. Ill.1978), the district court held that such conduct constitutes a violation of the Wagner-Peyser Act.

We conclude that the employer's duty to file an accurate clearance order carries with it an implied promise to refrain from thereafter contradicting or emasculating it by subsequent representations that are inconsistent therewith, or which render it misleading.

The decision of the district court is in all respects Affirmed.