Lucien BERTRAND, et al., Plaintiffs,

v.

Jimmie Lee JORDEN, Sr., et al., Defendants.

No. 85–918–Civ–T–15.

United States District Court,
M.D. Florida,
Tampa Division.

Oct. 16, 1987.

Nora Leto, Florida Rural Legal Services, Inc., Bartow, Fla., Gregory S. Schell, Legal Aid Bureau, Inc., Salisbury, Md., for plaintiffs.

Jimmie Lee Jorden, Sr., Gibsonton, Fla., Roy Lee Jorden, Wimauma, Fla., William H. Yanger, Jr., Tampa, Fla., for defendants.

## OPINION

CASTAGNA, District Judge.

This matter was tried before the Court on April 21, 1987. Testimony was received from Plaintiffs Lucien Bertrand and Jean Baptiste Belise and from Defendant Jimmie Lee Jorden, Sr. Plaintiffs introduced 30 exhibits into evidence. Based on the evidence received at trial, the Court makes the following findings of fact and conclusions of law:

### I. FINDINGS OF FACT

1. Plaintiff Lucien Bertrand is a resident of Fort Pierce, Florida. He is a Haitian national who came to the United States in 1980. Since his arrival in the United States, Bertrand has been authorized by the Immigration and Naturalization Service to seek gainful employment in this country. His principal employment in the United States has been in the harvesting of fruits and vegetables. Bertrand understands some English, but is fluent only in the Haitian Creole language. He is able to read somewhat in Haitian Creole.

2. Plaintiff Jean Baptiste Belise is a resident of Accomac, Virginia. He is a Haitian national who came to the United States in 1980. Since his arrival in the United States, Belise has been authorized by the Immigration and Naturalization Service to seek gainful employment in this country. His principal employment in the United States has been in the harvesting of fruits and vegetables. Belise understands some English, but is fluent only in the Haitian Creole language. Belise attended seven years of school in Haiti and is able to read in Haitian Creole.

3. Plaintiffs Juliora Augustin and Charles Sejour are migrant farmworkers.

4. Defendant Jimmie Lee Jorden, Sr., is a resident of Gibsonton, Florida. For the past twenty years, Jorden has worked as a farm labor contractor, or "crewleader." In

his job as a farm labor contractor, Jorden recruits, hires, furnishes and transports workers for agricultural employment in states along the east coast of the United States, including Florida, South Carolina and North Carolina.

5. In 1981, Jimmie Lee Jorden, Sr., served as a farm labor contractor for J.W. Yonce & Sons of Johnston, South Carolina. Jorden furnished approximately 70 workers to J.W. Yonce and Sons during June, July, and early August, 1981, to harvest Yonce's peach crop. Approximately one half of this group was comprised of Haitian nationals. Few of these Haitian nationals spoke English. Yonce paid Jorden a fee of approximately 70 cents for every ⅝ bushel of peaches harvested by Jorden's crew for his services as a farm labor contractor. From this sum, Jorden paid the pickers their wages, as well as the employer's share of Social Security (FICA) contributions.

6. In 1981, Jimmie Lee Jorden, Sr., served as a farm labor contractor for Bardin Brothers of Wilson, North Carolina. Jorden furnished approximately 70 workers to Bardin Brothers August through approximately October, 1981, to harvest Bardin Brothers' sweet potato and squash crops. Approximately one half of this group was comprised of Haitian nationals. Few of these Haitian nationals spoke English. Bardin Brothers paid Jorden a fee of approximately 75 cents for every bushel of sweet potatoes harvested by his crew for his services as a farm labor contractor. From this sum, Jorden paid the pickers their wages, as well as the employer's share of Social Security (FICA) contributions.

7. Defendant Roy Lee Jorden, is the son of Jimmie Lee Jorden, Sr. During 1981, Roy Lee Jorden assisted Jimmie Lee Jorden, Sr., in his farm labor contracting business. During the 1981 South Carolina peach harvest, Roy Lee Jorden drove a truck and transported the harvested fruit from the orchard to the packinghouse. During the 1981 North Carolina vegetable harvest, Roy Lee Jorden worked as a field supervisor, or "fieldworker," and oversaw the work of the members of Jimmie Lee Jorden, Sr.'s harvesting crew.

8. In the late spring of 1981, plaintiffs Bertrand and Belise were working with Jimmie Lee Jorden, Sr.'s harvest crew in the Ruskin, Florida, tomato harvest. At the time, Bertrand and Belise were residing in a labor camp with other members of Jorden's crew. When the tomato harvest ended, Jimmie Lee Jorden, Sr., recruited plaintiffs Bertrand and Belise, along with other workers to harvest peaches with the crew on the Yonce farm near Johnston, South Carolina.

9. At the time he recruited plaintiffs Bertrand and Belise in Florida to perform work in the 1981 South Carolina peach harvest, Jimmie Lee Jorden, Sr., failed to disclose to Bertrand and Belise in writing in a language in which they were fluent the terms and conditions of the proffered employment, including the place of employment, the crops on which they would be employed and the wage rates to be paid.

10. Jimmie Lee Jorden, Sr., transported plaintiffs Bertrand and Belise from Ruskin, Florida to South Carolina in his labor bus. Upon their arrival in South Carolina, Bertrand and Belise were housed in a labor camp, along with other members of Jorden's crew.

11. Plaintiffs Lucien Bertrand, Jean Baptiste Belise and Juliora Augustin were employed as members of Jimmie Lee Jorden, Sr.'s agricultural labor crew harvesting peaches on the operations of J.W. Yonce & Sons near Johnston, South Carolina during the summer of 1981.

12. During the 1981 South Carolina peach harvest, Jimmie Lee Jorden, Sr., was responsible for paying the members of his crew their wages.

13. During the 1981 South Carolina peach harvest, Jimmie Lee Jorden, Sr., paid the members of his crew once a week. The payment was in cash, with the wages enclosed in a small envelope. Two of these envelopes were received into evidence. Notations were made on these envelopes as to the gross wages, withholdings from wages and net wages of the harvester. Although Jorden received approximately 70 cents

per ⅝ bushel on behalf of each worker, this sum was not shown on the pay envelopes. Instead the pay envelopes included only that portion of Jorden's fee which was actually paid to the harvester. The notations on these envelopes were the only written statement Jorden gave to his crewmembers with their wages.

14. During the 1981 South Carolina peach harvest, Jimmie Lee Jorden, Sr., was responsible for maintaining payroll records with respect to the members of his crew. Copies of these records were entered into evidence. At the conclusion of each pay period, Jorden would provide a copy of these same records to J.W. Yonce & Sons.

15. The payroll records kept and maintained by Jimmie Lee Jorden, Sr., with respect to the 1981 South Carolina peach harvest did not include the number of hours worked by the individual pickers, the piece-rate paid or the worker's permanent addresses. Defendant Jimmy Lee Jorden, Sr., did not ask the plaintiffs for their permanent addresses. In addition, the payroll records did not list withholdings from wages for food purchased by workers from Jorden. For example, during the pay period of July 4, 1981, Jorden withheld $5.00 from the wages of Plaintiff Belise for "food," but this sum was not shown on the payroll records for that week. The records Jorden provided to J.W. Yonce & Sons were similarly deficient.

16. After approximately three weeks of the South Carolina peach harvest, plaintiff Jean Baptiste Belise had some food he had purchased at a nearby market stolen from his room at the labor camp. Belise went to Jimmie Lee Jorden, Sr., and asked his assistance in recovering these items. Jorden was unable to understand Belise and called his son, Roy Lee Jorden, to help with the problem. After several minutes of discussion, Roy Lee Jorden became angry and began beating Belise with a tree branch and with his fists. Jimmie Lee Jorden, Sr., pinned Belise's arms behind his back while Roy Lee Jorden repeatedly struck Belise. This attack occurred in the labor camp, in full sight of the other crewmembers. Following this incident, Belise returned to Florida to seek legal assistance. He stayed at his brother's home in Fort Pierce and was without gainful employment until the citrus harvest began in December, 1981.

17. At the conclusion of the 1981 South Carolina peach harvest, Jimmie Lee Jorden, Sr., attempted to recruit members of his crew to continue on with him to North Carolina for the vegetable harvest there. Among the workers Jorden recruited for the North Carolina harvest were plaintiffs Lucien Bertrand, Charles Sejour and Juliora Augustin.

18. At the time he recruited Plaintiff Bertrand in South Carolina to perform work in the 1981 North Carolina vegetable harvest, Jimmie Lee Jorden, Sr., failed to disclose to Bertrand in writing in a language in which he was fluent the terms and conditions of the proffered employment, including the place of employment, the crops on which they would be employed and the wage rates to be paid.

19. Jimmie Lee Jorden, Sr., transported plaintiff Bertrand from Johnston, South Carolina, to North Carolina in his labor bus. Upon his arrival in North Carolina, Bertrand was housed in a labor camp, along with other members of Jorden's crew.

20. Plaintiffs Lucien Bertrand, Charles Sejour and Juliora Augustin were employed as members of Jimmie Lee Jorden, Sr.'s agricultural labor crew harvesting vegetables on the operations of Bardin Brothers near Wilson, North Carolina, during the period from August through November, 1981.

21. During the 1981 North Carolina vegetable harvest, Jimmie Lee Jorden, Sr., was responsible for paying the members of his crew their wages.

22. During the 1981 North Carolina vegetable harvest, Jimmie Lee Jorden, Sr., paid the members of his crew once a week. The payment was in cash, with the wages enclosed in a small envelope. These envelopes were similar to those which were received into evidence with regard to the 1981 South Carolina peach harvest. Notations were made on these envelopes as to the gross wages, withholdings from wages

and net wages of the harvester. Although Jordan received approximately 75 cents per bushel on behalf of each worker, this sum was not shown on the pay envelopes. Instead, the pay envelopes included only that portion of Jorden's fee which was actually paid to the harvester. The notations on these envelopes were the only written statement Jorden gave to his crewmembers with their wages.

23. During the 1981 North Carolina vegetable harvest, Jimmie Lee Jorden, Sr., was responsible for maintaining payroll records with respect to the members of his crew. Copies of these records were entered into evidence. At the conclusion of each pay period, Jorden would provide a copy of these same records to Bardin Brothers.

24. Defendant Jimmy Lee Jorden, Sr., did not ask plaintiffs for their permanent addresses before making the payroll records.

25. The payroll records kept and maintained by Jimmie Lee Jorden, Sr., with respect to the 1981 North Carolina vegetable harvest did not include an accurate representation of the number of hours worked by the individual pickers, the piece-rate paid or the workers' permanent addresses. The records Jorden provided to Bardin Brothers were also deficient in these same respects.

26. Upon his arrival at the place of the North Carolina employment, Jimmie Lee Jorden, Sr., failed to post in a conspicuous place a written statement in a language in which plaintiff Bertrand was fluent of the terms and conditions of employment.

27. After their arrival in North Carolina, the members of Jimmie Lee Jorden, Sr.'s crew started harvesting sweet potatoes. On August 18, 1981, Lucien Bertrand and approximately 20 other members of the crew were sent to harvest butternut squash. Their work was supervised that day by Roy Lee Jorden. The crew started work without having the piece-rate for the squash disclosed to them. After the workers had been picking for about an hour, Jimmie Lee Jorden, Sr., came to the field and told the workers that the piece-rate for

squash would be 15 cents per bucket. Bertrand and the other Haitian workers in the crew were dissatisfied with this rate and ceased working.

28. Roy Lee Jorden was upset with the refusal of Bertrand and the other Haitians to pick the squash at the stated piece-rate. He and other members of Jimmie Lee Jorden, Sr.'s family started beating Bertrand and the other Haitians who refused to work. This attack took place in full view of the other crewmembers. From this beating, plaintiff Bertrand suffered a head wound which he had treated at the Wilson Memorial Hospital that evening.

29. Plaintiff Bertrand and the other workers who were struck in the field contacted Sister Julienne, a Catholic nun working for the local legal services program. Sister Julienne came to the labor camp and spoke to both Jimmie Lee Jorden, Sr., and Roy Lee Jorden regarding the attack. After Sister Julienne left, Roy Lee Jorden became angry and stated to plaintiff Bertrand that he caused trouble by calling Sister Julienne to the camp. Roy Lee Jorden then told Bertrand that unless Bertrand left the camp, Roy Lee Jorden would beat him until he died. Jimmie Lee Jorden, Sr., was present when Roy Lee Jorden made this statement to Bertrand.

30. Fearing for his safety, Bertrand again contacted Sister Julienne. She came to the labor camp and transported Bertrand and the other Haitian workers who had been beaten to another camp in a different location.

31. In bringing this action, plaintiffs Lucien Bertrand and Jean Baptiste Belise have incurred certain costs. Bertrand has missed a total of three days of work in meeting with his attorneys and attending this trial, losing an average of $50 in earnings per day. Belise missed a day of work in attending trial, for which he would have earned $5.34 per hour for at least eight hours of work. In addition, Bertrand and Belise have been advanced travel and lodging expenses by the Legal Aid Bureau, Inc., which they will be required to repay from any award made by the Court in this case.

32. Jimmie Lee Jorden, Sr., had been the subject of enforcement efforts under the Farm Labor Contractor Registration Act ("FLCRA") prior to 1981. In 1978, he was investigated by the Department of Labor under the FLCRA and was the subject of administrative proceedings as a result of the investigation. These proceedings were settled on December 16, 1980, when Jorden entered into consent findings with the Department of Labor. As part of these consent findings, Jorden admitted past violations of the FLCRA and stated that he was then in compliance with the FLCRA and would continue to comply with it in the future.

33. Jimmie Lee Jorden, Sr., was also a defendant in administrative and legal proceedings brought by the United States Department of Labor involving alleged violations of the FLCRA which occurred during the 1980 South Carolina peach harvest and the 1980 North Carolina vegetable harvest. As a result of these proceedings, Jorden was permanently enjoined from further violations of the FLCRA.

34. As a result of his activities during the 1981 South Carolina peach harvest and the 1981 North Carolina vegetable harvest, Jimmie Lee Jorden, Sr., was a defendant in an action brought by the United States Department of Labor for unpaid minimum wages due members of his crew pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* As a result of this litigation, Jorden was ordered to pay $10,417.10 due as back wages to members of his crew, including each of the plaintiffs in this case.

## II. CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties and the subject matter of this action. 7 U.S.C. § 2050a.

2. At all times relevant to this action, Jimmie Lee Jorden, Sr., was a farm labor contractor within the meaning of the FLCRA, 7 U.S.C. § 2042(b).

3. At all times relevant to this action, plaintiffs Lucien Bertrand, Jean Baptiste Belise, Juliora Augustin and Charles Sejour were migrant workers within the meaning of the FLCRA, 7 U.S.C. § 2042(g) and 29 C.F.R. Section 40.2(e).

4. The work performed by plaintiffs and the other members of Jimmie Lee Jorden, Sr.'s crew during the 1981 South Carolina peach harvest constituted a separate and distinct transaction from the work performed by plaintiffs and the other workers with Jorden's crew during the 1981 North Carolina vegetable harvest. Therefore, plaintiffs may recover separate damages under the FLCRA for violations of the Act which occurred in each location. *Strong v. Williams*, 89 Lab. Cases (CCH) paragraph 33,929 at page 49,310 (M.D.Fla. 1980); *Certilus v. Peeples*, 101 Lab. Cases (CCH) paragraph 34,587 at page 46,456 (M.D.Fla.1984) [Available on WESTLAW, DCT database].

5. Jimmie Lee Jorden, Sr., violated the FLCRA, 7 U.S.C. § 2045(b), and its attendant regulations, 29 C.F.R. Section 40.51(g), by failing at the time of the recruitment for the 1981 South Carolina peach harvest to disclose to plaintiffs Bertrand and Belise in writing in Haitian Creole the terms of the proffered employment. To the extent any English language disclosures were made, these were insufficient since plaintiffs are fluent only in Haitian Creole. *Espinoza v. Stokely–Van Camp, Inc.*, 89 Lab. Cases (CCH) paragraph 33,923 at page 49,279 (N.D.Ill.1980) [Available on WESTLAW, DCT database], *aff'd*, 641 F.2d 535 (7th Cir.) *cert. dismissed*, 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed. 2d 1033 (1981).

6. With respect to the labor of plaintiffs Bertrand, Belise and Augustin in the 1981 South Carolina peach harvest, Jimmie Lee Jorden, Sr., failed to keep and maintain payroll records as required by the FLCRA, 7 U.S.C. § 2045(e), and its attendant regulations, 29 C.F.R. Section 40.51(d). The South Carolina payroll records did not show the number of hours worked, the rate per unit for piece-rate labor, the employees' permanent addresses and withholding from wages for purchases of food.

7. In violation of the FLCRA, 7 U.S.C. § 2045(e), and its attendant regula-

tions, 29 C.F.R. Section 40.51(*l*), Jimmie Lee Jorden, Sr., failed to provide to J.W. Yonce & Son all information and records required to be kept under Section 6(e) of the FLCRA with respect to the labor of plaintiffs Bertrand, Belise and Augustin during the 1981 South Carolina peach harvest. The payroll records furnished to J.W. Yonce & Sons did not show the number of hours worked, the rate per unit for piece-rate labor, the employees' permanent addresses and withholdings from wages for purchases of food.

■ 8. During the 1981 South Carolina peach harvest, Jimmie Lee Jorden, Sr., failed to provide to plaintiffs Bertrand, Belise and Augustin a statement of all sums paid to him by J.W. Yonce & Sons on account of the labor of these individuals, thereby violating the FLCRA, 7 U.S.C. § 2045(e), and its attendant regulations, 29 C.F.R. Section 40.51(j). Although Jorden gave these individuals pay envelopes showing their earnings and the withholdings from wages, these pay envelopes did not show the sum Jorden received for his services from J.W. Yonce & Sons. *See Williams v. Tri–County Growers, Inc.,* 747 F.2d 121, 130–31 (3rd Cir.1984).

9. Jimmie Lee Jorden, Sr., violated the FLCRA, 7 U.S.C. § 2045(b), and its attendant regulations, 29 C.F.R. Section 40.51(g), by failing at the time of the recruitment for the 1981 North Carolina vegetable harvest to disclose to plaintiff Bertrand in writing in Haitian Creole the terms of the proffered employment.

10. With respect to the labor of plaintiffs Bertrand, Augustin and Sejour in the 1981 North Carolina vegetable harvest, Jimmie Lee Jorden, Sr., failed to keep and maintain payroll records as required by the FLCRA, 7 U.S.C. § 2045(e), and its attendant regulations, 29 C.F.R. Section 40.51(k). The North Carolina payroll records did not show the actual number of hours worked, the rate per unit for piece-rate labor and the employees' permanent addresses.

11. In violation of the FLCRA, 7 U.S.C. § 2045(e), and its attendant regulations, 29 C.F.R. Section 40.51(*l*), Jimmie Lee Jorden, Sr., failed to provide to Bardin Brothers all information and records required to be kept under Section 6(e) of the FLCRA with respect to the labor of plaintiffs Bertrand, Augustin and Sejour during the 1981 North Carolina vegetable harvest. The payroll records furnished to Bardin Brothers did not show the number of hours worked, the rate per unit for piece-rate labor and employees' permanent addresses.

12. During the 1981 North Carolina vegetable harvest, Jimmie Lee Jorden, Sr., failed to provide to plaintiffs Bertrand, Augustin and Sejour a statement of all sums paid to him by Bardin Brothers on account of the labor of these individuals, thereby violating the FLCRA, 7 U.S.C. § 2045(e), and its attendant regulations, 29 C.F.R. Sections 40.51(e), 40.51(j). Although Jorden gave these individuals pay envelopes showing their earnings and the withholdings from wages, these pay envelopes did not show the sum Jorden received for his services from Bardin Brothers. *See Williams,* 747 F.2d at 130–31.

■ 13. During the North Carolina vegetable harvest, Jimmie Lee Jorden, Sr., failed to post in a conspicuous place a written statement in Haitian Creole of the terms and conditions of the North Carolina employment, thereby violating the FLCRA, 7 U.S.C. § 2045(c), and its attendant regulations, 29 C.F.R. Section 40.51(h).

■ 14. Jimmie Lee Jorden, Sr.'s violations of the FLCRA and its attendant regulations were intentional within the meaning of the FLCRA, 7 U.S.C. § 2050a(b).

15. The FLCRA provides for the award of actual damages or statutory damages of up to $500 for each violation of the Act. 7 U.S.C. § 2050a(b). Plaintiffs have elected to seek statutory damages in this case.

■ 16. The purpose of the civil remedy under the FLCRA is not restricted to compensation of individual plaintiffs. "It is designed also to promote enforcement of the Act and thereby deter and correct the exploitative practices that have historically plagued the migrant farm labor market." *Beliz v. W.H. McLeod & Sons Packing Co.,* 765 F.2d 1317, 1332 (5th Cir.1985).

17. In determining the amount of statutory damages to be awarded plaintiffs, the Court must consider a number of factors. These include whether the violations of the Act were substantive in nature, the nature and persistence of the violations, the extent of the defendant's culpability, damage awards in similar cases and the defendant's ability to prevent future violations of the Act. It ought not be cheaper to violate the Act and be sued than to comply with the statutory requirements. Nor should a worker who successfully brings suit find the recovery inadequate to cover his personal costs in filing suit and testifying. Finally, the legislative history of the Act notes that farmworkers who attempt to assert their rights must overcome a general background of fear and intimidation caused by the widespread practice of retaliation against those who complain about violations. Accordingly, awards should be adequate to encourage workers to assert their statutory rights. *Beliz,* 765 F.2d at 1332–33.

18. In evaluating these factors in this case, the Court concludes that an award in the full amount of $500 in statutory damages is appropriate. The violations here are substantive and have served to deprive plaintiffs of the substantive protections of the Act. *Washington v. Miller,* 721 F.2d 797, 803 (11th Cir.1983). This Court has on a number of occasions concluded that recordkeeping violations of the sort found in this case are substantive rather than technical in nature, and therefore merit the award of the full $500 in statutory damages. *E.g., Id.; Rivera v. Adams Packing Association, Inc.,* 707 F.2d 1278 (11th Cir.1983); *Strong v. Williams,* 89 Lab. Cases (CCH) at page 49,312. The importance of accurate payroll records is obvious in instances, such as here, where workers' earnings often fall below the minimum wage established by federal law. Only through accurate records of the number of hours worked can the minimum wage obligations be calculated with preci-

sion. *Castillo v. Givens,* 704 F.2d 181, 198 n. 41 (5th Cir.) *cert. denied,* 464 U.S. 850, 104 S.Ct. 160, 78 L.Ed.2d 147 (1983). Even though the Department of Labor calculated back wages due plaintiffs and other crewmembers, the unavailability of precise data on the number of hours worked made these calculations at best an estimate. Similarly, the disclosure and posting violations were substantive rather than technical. The August 18, 1981, incident in North Carolina during which plaintiff Bertrand and other crewmembers were beaten arose almost entirely from a dispute over the wage rate, a term which the FLCRA requires farm labor contracts to disclose at the time of recruitment and to post at the jobsite. If the proper disclosures had been made and proper posting had occurred, it is likely that the struggle in the field would never have happened.

19. The award of the full $500 in statutory damages is also justified because of Defendant Jimmie Lee Jorden, Sr.'s history of violation of the Act. Jorden has been the subject of repeated enforcement efforts by the Department of Labor and has on a number of occasions signed documents stating that he intended to comply with the law in the future. It is apparent that these enforcement actions have had little impact on Jorden's business practices. At trial, he indicated that the back wage award of over $10,000 involving the 1981 season was simply a necessary cost of doing business. Although Jorden evidently admitted many of the FLCRA violations to the Department of Labor investigators during the 1981 North Carolina vegetable harvest, he now denies these statements and insists that he did nothing wrong. It appears that only a sizeable monetary judgment will ensure compliance with the law in the future.[1]

20. The award of the full $500 in statutory damages is particularly appropriate with regard to plaintiffs Bertrand and Belise. Because they raised legitimate concerns with Jimmie Lee Jorden, Sr., or his

---

1. The FLCRA has been repealed and replaced by the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801, *et seq.* The AWPA continues to require farm labor contractors to comply with disclosure, posting, recordkeeping and wage statement provisions familiar to those under the FLCRA.

field supervisors, they found themselves beaten. Bertrand required medical treatment and Belise carries a scar to this day from the attack. These beatings occurred in the presence of other crewmembers and had the effect of intimidating the workers who remained with the crew. Unless a salutary damage award is made, other farmworkers would conclude that insisting upon their statutory rights would result in no significant restitution from the Courts. Additionally, the Court notes that both Bertrand and Belise have incurred personal costs in pursuing their claims and that the damage award must make them whole for their lost wages and related expenses.

21. To summarize, judgment is entered in favor of plaintiffs and against defendant Jimmie Lee Jorden, Sr., as follows:

| | | |
|---|---|---|
| **Lucien Bertrand** | Total award: | **$4,500.00** |
| Violations of the FLCRA during the South Carolina transaction: | | |
| Disclosure at time of recruitment | | 500.00 |
| Recordkeeping | | 500.00 |
| Failure to provide grower with records | | 500.00 |
| Wage statements | | 500.00 |
| Violations of the FLCRA during the North Carolina transaction: | | |
| Disclosure at time of recruitment | | 500.00 |
| Recordkeeping | | 500.00 |
| Failure to provide grower with records | | 500.00 |
| Posting job terms at jobsite | | 500.00 |
| Wage statements | | 500.00 |
| **Jean Baptiste Belise** | Total award: | **$2,000.00** |
| Violations of the FLCRA during the South Carolina transaction: | | |
| Disclosure at time of recruitment | | 500.00 |
| Recordkeeping | | 500.00 |
| Failure to provide grower with records | | 500.00 |
| Wage statements | | 500.00 |
| **Juliora Augustin** | Total award: | **$3,000.00** |
| Violations of the FLCRA during the South Carolina transaction: | | |
| Recordkeeping | | 500.00 |
| Failure to provide grower with records | | 500.00 |
| Wage statements | | 500.00 |
| Violations of the FLCRA during the North Carolina transaction: | | |
| Recordkeeping | | 500.00 |
| Failure to provide grower with records | | 500.00 |
| Wage statements | | 500.00 |
| **Charles Sejour** | Total award: | **$1,500.00** |
| Violations of the FLCRA during the North Carolina transaction: | | |
| Recordkeeping | | 500.00 |
| Failure to provide grower with records | | 500.00 |
| Wage statements | | 500.00 |

23. Jimmie Lee Jorden, Sr., is hereby permanently enjoined from failure to comply with the disclosure, posting, recordkeeping and wage statement provisions of the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1821 and 1831.

24. The monetary judgment set forth in paragraph 22 shall carry post-judgment interest at the legal rate from this date until paid in full.

25. Plaintiffs shall be awarded the costs of this action and shall promptly apply to the Clerk for the award of the same.