Eustacio MARTINEZ, et al.,
Plaintiffs–Appellees,

v.

Kyle SHINN and Karen Shinn, and Shinn
& Son, Inc., Defendants–Appellants.

No. 91–36005.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 6, 1993.

Decided May 11, 1993.

Ryan M. Edgley, Lofland & Associates, Yakima, WA, for defendants-appellants.

Guadalupe Gamboa, Evergreen Legal Services, Granger, WA, for plaintiffs-appellees.

Before: BOOCHEVER, THOMPSON and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

Appellees, forty migrant and seasonal agricultural workers, sued appellants, Washington farmers, for violations of the Migrant and Seasonal Agricultural Worker Protection Act (MSAWPA), Fair Labor Standards Act

(FLSA), and Washington law. The case was tried before a magistrate judge, who found in favor of the workers and awarded them actual and statutory damages under the MSAW-PA, unpaid minimum wage amounts and liquidated damages under the FLSA, and back-pay amounts under Washington law, as well as injunctive relief. The farmers appeal the amounts of statutory damages awarded under the MSAWPA and the inclusion of damages for emotional distress in the court's award of actual damages to three plaintiffs. We affirm.

## I. Background.

Plaintiffs worked as asparagus cutters on appellants Shinns' Washington farm in 1988. All of the plaintiffs but two had their permanent place of residence in Texas. All of the Texas-based plaintiffs except the Ofelia Gonzalez family were recruited to work for the Shinns by Eustacio Martinez, who had cut asparagus for the Shinns since 1984. The plaintiffs are all of Mexican descent. Most of them have limited educations and speak little or no English. The Texas-based plaintiffs perform farm labor for a living, following the harvests.

Prior to 1987, the first task to be performed by migrant workers recruited by Eustacio Martinez was the cutting of asparagus. In 1987, some of the workers were asked to arrive early to plant asparagus. In 1988, the Shinns again asked Eustacio Martinez to bring his workers early to plant asparagus. When the workers arrived at the agreed-upon date, however, they found that the planting work had already been completed. The plaintiffs moved into housing provided by the Shinns, and awaited the commencement of harvesting work.

Several days after plaintiffs arrived at the Shinns' farm, they were given a "Labor and Housing Agreement," which made disclosures concerning the terms and conditions of employment. The form stated that the workers would be paid 11 cents per pound of asparagus cut, and a bonus of 3 cents per pound upon completion of the season. The top portion of the form was written in English, and was complete as to the terms of employment. The bottom portion was writ-ten in Spanish, but the portions specifying the terms and conditions of employment were left blank on some workers' forms.

Plaintiffs began cutting asparagus on April 8, 1988. During the first part of the season, they were paid 11 cents per pound of asparagus cut and delivered to the packer-purchaser. On or around May 25, however, the Shinns began to pay plaintiffs by "paid pounds," which is asparagus of a warehouse acceptable grade. Cut pounds exceed paid pounds because some of the asparagus cut is not marketable. Plaintiffs did not agree to this change, and the Shinns did not explain to them the reasons for the change at the time it was made.

The asparagus season ended on June 21, 1988. Plaintiffs received their final paychecks on June 24. The paychecks were accompanied by a note from the Shinns stating that plaintiffs had been mistakenly overpaid for cut instead of paid pounds from April 8 to May 25 and that the overpayment had been deducted from their end-of-season bonuses. The deductions significantly reduced plaintiffs' expected bonuses. Eustacio Martinez told Kyle Shinn that the plaintiffs were upset about the deductions, and asked Shinn to pay the withheld wages. Shinn refused. The plaintiffs contacted Evergreen Legal Services. After being contacted by an Evergreen lawyer, the Shinns made additional payments to plaintiffs.

At one point during the course of the harvest, Kyle Shinn told Eustacio Martinez that all of the workers would be rehired the following year. At the end of the 1988 harvest, Shinn told Martinez that there would be no work for Martinez or any of the other workers during the following year. At trial, Shinn admitted that he would not rehire the workers because he was angry that they had sued.

The court found that the Shinns violated the following provisions of the MSAWPA:

(1) failure to make written disclosure of terms of employment, 29 U.S.C. § 1821(a);

(2) failure to keep required records, 29 U.S.C. § 1821(d);

(3) failure to pay wages when due, 29 U.S.C. § 1822(a);

(4) failure to post a Department of Labor poster in a conspicuous location readily accessible to plaintiffs, 29 U.S.C. § 1821(b);

(5) failure to abide by the terms of the working arrangement with plaintiffs, 29 U.S.C. § 1822(c); and

(6) retaliatory firing of and refusal to re-hire plaintiffs, 29 U.S.C. § 1855(a).

The court awarded nine of the plaintiffs lost wages for their retaliation claims, and awarded three of the plaintiffs an additional $5000 each for emotional distress. The court also awarded the plaintiffs statutory damages in the following amounts:

(1) $250 for disclosure violations;

(2) $250 for recordkeeping violations;

(3) $500 for failure to timely pay wages;

(4) $100 for failure to post the MSAWPA poster in a conspicuous location;

(5) $250 for breach of working arrangement; and

(6) $500 for retaliatory discharge.[1]

The court also found that the Shinns violated the FLSA by failing to pay the plaintiffs the minimum wage. The court awarded plaintiffs the minimum wage amounts owing, and liquidated damages equal to the sum of the unpaid wages. Finally, the court found that the Shinns violated Wash.Rev.Code § 49.48.010 by breaching their contractual obligation to pay plaintiffs eleven cents per pound of cut asparagus and a bonus of three cents per cut pound. The court awarded plaintiffs the amount owed under the contract, along with pre-judgment interest.

The total amount of actual damages awarded under the MSAWPA, FLSA, and state law was $39,017.02. The total amount of statutory damages awarded under the MSAWPA was $64,000. The Shinns appeal only: (1) the amounts of statutory damages awarded on the plaintiffs' MSAWPA claims, and (2) the award of damages for emotional distress made to three plaintiffs.

## II. Statutory Damages.

The MSAWPA authorizes awards of statutory damages of up to $500 per plaintiff per violation. 29 U.S.C. § 1854(c); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1309 (9th Cir.1990). A plaintiff need not show actual injury to recover statutory damages. *Six Mexican Workers*, 904 F.2d at 1309. "The civil remedy was provided not only to compensate injuries, but also to promote enforcement of the Act and deter violations." *Id.* This court, refusing to follow other courts in attributing a punitive purpose to the Act, has "refrained from interpreting [the Act] to permit imposition of a 'penalty disproportionate to the offense.'" *Id.* (quoting *Alvarez v. Longboy*, 697 F.2d 1333, 1340 (9th Cir.1983)).

In determining whether an award of statutory damages furthers the MSAWPA's objectives, the court should consider:

1) the amount of award to each plaintiff, 2) the total award, 3) the nature and persistence of the violations, 4) the extent of the defendant's culpability, 5) damage awards in similar cases, 6) the substantive or technical nature of the violations, and 7) the circumstances of each case.

*Id.* (citing *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1332 (5th Cir. 1985)). This court reviews an award of statutory damages under the MSAWPA for abuse of discretion. *Id.* at 1304.

The central question we must address is whether, considering the *Beliz* factors listed above, the district court abused its discretion in setting the amounts of statutory damages. Here each plaintiff received between $1000 and $1750 in statutory damages for six violations of the MSAWPA. The awards for each individual violation ranged from $100 to $500. These amounts do not exceed awards in other MSAWPA cases. *See Montelongo v. Meese*, 803 F.2d 1341 (5th Cir.1986), *cert. denied*, 481 U.S. 1048, 107 S.Ct. 2179, 95 L.Ed.2d 835 (1987) (plaintiffs awarded $500 for each of three violations); *Washington v. Miller*, 721 F.2d 797 (11th Cir.1983) (plaintiffs awarded $500 for each of four or five

---

1. Not every plaintiff was awarded statutory damages for every violation. For instance, none of the plaintiffs awarded actual damages for retalia-

tory discharge received statutory damages for this violation.

violations); *Espinoza v. Stokely–Van Camp, Inc.*, 641 F.2d 535 (7th Cir.), *overruled on other grounds,* 658. F.2d 1217 (7th Cir.1981), *cert. denied,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981) (plaintiffs awarded $500 for single violation); *Bertrand v. Jorden,* 672 F.Supp. 1417 (M.D.Fla.1987) (plaintiffs awarded $500 for each of three to nine violations); *Alzalde v. Ocanas,* 580 F.Supp. 1394 (D.Colo.1984) (plaintiffs awarded $500 for each of six violations). While the total award of $64,000 is on the high end of the spectrum, it does not exceed awards given in other cases. *See Montelongo,* 803 F.2d 1341 (total award of $238,500 to 159 plaintiffs for three violations).

After carefully reviewing the record, we have determined that the district court's awards are justified in light of the nature and persistence of the Shinns' violations, the extent of the Shinns' culpability, and the substantive nature of their violations. The district court found that the Shinns had "intentionally violated no less than ten separate requirements of the MSAWPA,"[2] and noted the "potentially devastating" effect that violations committed by the Shinns could have on migrant workers "who are hovering at or below the poverty line." The court also made it abundantly clear that it found the Shinns highly culpable, stating that Kyle Shinn "attempted to make himself and the other defendants exempt from the purview of the Act," and that "the violations evidence a callous disregard for the financial working conditions of the plaintiffs."

The Shinns have argued that their violations were "technical" rather than substantive, and that they should be attributed a low degree of culpability. We disagree. The Shinns, through Eustacio Martinez, recruited plaintiffs to come to Washington to work without disclosing any of the terms or conditions of the offered employment. They asked the plaintiffs to arrive early in order to plant asparagus, but failed to provide such work when plaintiffs arrived, leaving them stranded at their labor camp for two weeks with little or no income. The Shinns reduced the pay from cut to paid pounds unilaterally and without notice. They failed to keep and provide the workers with records of the amount of hours worked by each worker and the amounts deducted from the workers' paychecks, making it virtually impossible to determine whether the workers were paid the federal minimum wage. They failed to pay the workers' wages when due, and ultimately paid only when the workers enlisted the aid of an attorney. Finally, in retaliation for the workers bringing legal proceedings against them, the Shinns fired some workers from post-harvest work and refused to hire any of the workers for the next season's asparagus harvesting. The district court reasonably exercised its discretion in treating these violations as not merely technical.[3]

The Shinns have also tried to bring this case within *Six Mexican Workers,* arguing that the district court's award of statutory damages was "disproportionately punitive" and must be reversed on appeal. We agree with the workers, and the district court, that this case is distinguishable from *Six Mexican Workers. Six Mexican Workers* was a class action brought on behalf of 1349 undocumented workers. Many of the workers had worked only a few hours of the season, and none of the workers proved actual damages occasioned by the defendant's violations of the MSAWPA. The district court awarded a total of $1,846,500 in statutory damages. *Id.* at 1309.

Here, in contrast, most of the plaintiffs worked for the Shinns for the entire 1988 season, and even those that left early worked a significant amount of time. Plaintiffs successfully proved actual damages resulting from the Shinns' acts. This case involved only forty plaintiffs, and does not implicate

---

**2.** Because of section 1854(c)(1)(A)'s requirement that "multiple infractions of a single provision of this Act ... shall constitute only one violation for purposes of determining the amount of statutory damages due a plaintiff," the court only assessed statutory damages for six violations.

**3.** The only violation that could be considered technical is the Shinns' failure to post the MSAWPA poster in a conspicuous location. Even if this violation is considered technical, however, the court awarded each plaintiff only $100 for the violation. This award is much lower than that awarded for the same violation in another case, *see Washington v. Miller,* 721 F.2d 797 (each of seven plaintiffs awarded $500), and is justified in light of the persistence of the Shinns' violations and their high degree of culpability.

the rule applied in *Six Mexican Workers* that "[w]hen the class size is large, the individual award will be reduced so that the total award is not disproportionate." *Id.* Here the aggregate award, $64,000 is not "disproportionately punitive" considering the size of the class, the number and nature of the violations, the Shinns' highly culpable conduct. Here, as we have explained, the statutory damages were not duplicative of the actual damages awarded but required payment by the Shinns for violations that would otherwise have not been compensated. Also, as we stated in *Six Mexican Workers*, statutory damage awards under the MSAWPA serve a deterrent function as well as a compensatory function. *Id.*, 904 F.2d at 1309. The district court's award was not excessive in light of those functions.

We also reject the Shinns' argument that the district court's award of backpay with interest under state law and statutory damages for failure to pay wages when due constitutes a double recovery in violation of 29 U.S.C. § 1854(c)(1). That section provides:

> If the court finds that the respondent has intentionally violated *any provision of this Act* ... it may award damages up to and including an amount equal to the amount of actual damages, or statutory damages of up to $500 per plaintiff per violation.

This language does not expressly or implicitly exclude an award of statutory damages for violation of "any provision of this Act [MSAWPA]," plus actual damages for violation of state law. *See Frederick County Fruit Growers Ass'n, Inc. v. Dole*, 709 F.Supp. 242, 248 (D.D.C.1989), *affirmed*, 968 F.2d 1265 (D.C.Cir.1992). We need not decide whether a court may award statutory damages when actual damages are awarded under state law for the same harm because, as the district court made clear, the amounts it awarded do not compensate for the same harm. While the statutory damage award was intended to "compensate the plaintiffs for not receiving *timely* payment" and to "deter the defendants from withholding *time-*

*ly* payment in the future," the backpay award compensated plaintiffs for the Shinns' failure to pay the wages they were obligated to pay under the contract.[4]

III. Emotional Distress Awards.

The Shinns argue that the district court erred in awarding three of the plaintiffs $5000 each for emotional distress caused by the Shinns' retaliatory firing of and/or refusal to rehire them. Specifically, they argue that 29 U.S.C. § 1855(b) prohibits the court from awarding both reinstatement with backpay and damages for emotional distress, and that even if such an award is allowed, the facts did not justify recovery in this case.

The evidence was slim for the emotional distress damages, but because they did not address the issue before the district court, either during trial or in their motion to amend the judgment, the Shinns have waived their argument that the statute prohibits an award of backpay and emotional distress. *See In re Marvin Properties, Inc.*, 854 F.2d 1183, 1186 (9th Cir.1988). Had they raised it below, the magistrate judge might have reopened the evidence or taken other curative action.

AFFIRMED.

---

4. The Shinns made additional arguments, which we also reject. We conclude that there is sufficient evidence in the record to support the award of damages for breach of the working arrangement and retaliatory firing of and/or refusal to rehire all plaintiffs. We also conclude that the district court did not fail to consider the plaintiffs' recovery on related claims when it awarded both minimum wage amounts owing and statutory damages for recordkeeping violations.